**CABOT CORP. and Cabot Argentina S. A. I. C., Plaintiffs,**

v.

**S. S. MORMACSCAN, her engines, etc., Moore-McCormack Lines, Inc., and John W. McGrath Corporation, Defendants.**

No. 62 Ad. 783.

United States District Court
S. D. New York.

April 29, 1969.

Hill, Rivkins, Louis & Warburton, New York City, by Leo P. Cappelletti and Martin B. Mulroy, New York City, of counsel for plaintiffs.

McHugh & Leonard, New York City, by Martin J. McHugh, New York City, of counsel, for defendants.

EDELSTEIN, District Judge.

## OPINION

This is an action by Cabot Corporation and Cabot Argentina, S.A.I.C., foreign corporations (hereinafter Cabot) against the John W. McGrath Corporation,[1] a domestic corporation (hereinafter McGrath), stevedores, for damage to its cargo brought about by the negligence of the defendant-stevedore in dropping cargo belonging to another shipper on the previously stored cargo of the plaintiff.

Defendant, John W. McGrath Corp., concedes that while performing stevedoring operations on behalf of Moore-McCormack Lines, its stevedores negligent-

---

1. A claim aginst Moore-McCormck Lines was voluntarily dismissed without prejudice.

ly permitted two heavy steel plates (owned by a stranger to this action) to drop from a sling onto a steam turbine generator set owned by plaintiff. The generator set had been loaded into the hold of the ship previously. Plaintiff alleges that the damage to its cargo amounted to $42,526.72, and the defendant does not seriously dispute this figure. Defendant does maintain that it is entitled to the limitation of liability provisions contained in Sections 2 and 13 of the bill of lading that was issued to Cabot by Moore-McCormack Lines, Inc., the owner of the vessel. These sections read as follows:

"2. In this bill of lading, the word 'ship' shall include any substituted vessel, and any craft, lighter or other means of conveyance owned, chartered, operated or used by the carrier in performing this contract; *the word 'carrier' shall include the* ship, her owner, operator, demise charterer, time charterer, master and any substituted carrier, whether acting as carrier or bailee, *and all persons rendering services in connection with the performance of this contract*; the word 'shipper' shall include the person named as such in this bill of lading and the person for whose account the goods are shipped; the word 'consignee' shall include "the holder of this bill of lading, properly endorsed and the receiver and the owner of the goods; the word 'charges' shall include freight and all expenses and money obligations payable by the goods, shipper, consignee, or any of them; the words 'at the risk and expense of the goods' or the like mean, in addition at the risk and expense of the shipper and consignee; the words 'government' and 'authorities' shall each include the United Nations or any similar international organization, as well as a sovereign state or political subdivision thereof, and any person acting or purporting to act for any such."

"13. *In case of any loss or damage to or in connection with goods exceeding in actual value $500*, lawful money of the United States per package or, in case of goods not shipped in packages, per customary freight unit, *the value of the goods shall be deemed to be $500 per package* or per unit, on which basis the freight is adjusted and the carrier's liability in any capacity, if any, shall be determined on a value of $500 per package or per customary freight unit, unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper upon delivery to the carrier and inserted in this bill of lading and extra freight paid if required; and in such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, and the value shall nevertheless be deemed the declared value and the carrier's liability in any capacity, if any, shall not exceed the declared value. Whenever less than $500 per package or other freight unit, the value of the goods in the calculation and adjustment of claims shall, to void uncertainties and difficulties in fixing value, be deemed to be the invoice value, plus freight and insurance if paid, whether any other value be higher or lower." (emphasis added)

Defendant argues that because it—as a stevedore—rendered services in connection with the performance of plaintiff's contract with Moore-McCormack, that it is by definition a "carrier." As a result it—as a carrier—is entitled to the clear $500 limitation of liability expounded in Section 13. If defendant stevedoring corporation can be deemed a carrier within the purview of Section 2, then it is clear to this court that defendant is also entitled to the limitation provisions of Section 13.

Two questions arise in determining whether McGrath is a "carrier" within the meaning of Section 2: first, is McGrath a "person rendering service" and if so, is it rendering those services in connection with the performance of the con-

**1173**

tract (i. e., the bill of lading) between plaintiff and Moore-McCormack.

Plaintiff relies on Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959) in support of its theory that Section 2 of the bill of lading does not encompass stevedores. That *Herd* held as much is true, but what is also true is that the bill of lading in *Herd* did not contain the language "and all persons rendering services * * * etc." By its terms it was limited to carriers as that term is generally understood. This fact was the gravamen of *Herd*, for the court made it quite clear that the bill of lading could confer the limitation of liability benefit on the third party stevedores, although in this particular bill of lading it had not done so. Speaking for a unanimous court, Justice Whittaker said:

"Looking to the limitation of liability provisions of the bill of lading, we see that they * * * do not advert to stevedores or agents. Instead they deal only with the 'Carrier's liability' to the shippers. They say that the 'Carrier's liability, if any, shall be determined on the basis of $500 per package.' There is thus nothing in those provisions to indicate that the contracting parties intended to limit the liability of stevedores * * *. If such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract. Since they did not do so, it follows that the provisions of the bill of lading did 'not cut off [respondent's] remedy against the agent that did the wrongful act.'" at 302, 79 S.Ct. at 769.

In a subsequent case analogous to *Herd*, the District Court for the Virgin Islands declined to include the defendant lighterage company within the term "carrier" based on a definition of the word "carrier" which included "the ship, her owner, master, operator, demise charterer and if bound thereby, the time charterer, and any substituted carrier, whether the owner, operator, charterer or master shall be acting as carrier or bailee." Virgin Islands Corp. v. Merwin Lighterage Co., 177 F.Supp. 810, 813 (V.I.1959). Following *Herd*, the court found no basis to include lighterage services in the concept of carrier as that term was defined in the bill of lading, because the intent to include them within the bill of lading was not spelled out. In Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y. 1967) aff'd. per curiam, 386 F.2d 839 cert. denied sub nom. Carle & Montanari Inc. v. John W. McGrath Corp., 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968), on the other hand, the term "stevedore" itself was included in the bill of lading and the court accordingly held "that under the bill of lading the stevedore is entitled to the benefit of the $500 per package limitation of liability" 275 F.Supp. at 78.

It is undoubtedly clear, then, that a bill of lading may limit the liability of the third-party stevedore when the term stevedore is used in the bill of lading. It is less clear, however, whether a stevedore is a "person rendering services" within the meaning of Section 2 of the bill of lading in issue, and thus possibly entitled to the limitation provision of Section 13. Attempts to limit liability for negligence are not the most favored creatures of the law. As the *Herd* court put it:

"[C]ontracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they 'are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expressed such to be the understanding of the contracting parties.' Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123–124, 75 S.Ct. 649, 99 L. Ed. 933 (concurring opin.)" *Herd* 359 U.S. at 305, 79 S.Ct. at 771.

■ Here, the language employed in the bill of lading does not use the word "stevedore." In the light of the dictate in *Herd* calling for clear language to express the understanding between the parties one wonders why the word "stevedore" was not used expressly in the instant bill of lading, inasmuch as the use of the word "stevedore" would have left no doubt as to the intentions of the parties concerning who are beneficiaries of the limitation provisions. It would have been a simple enough matter to have mentioned stevedores in *haec verbae, e. g.,* "and all persons including stevedores rendering * * *". Stevedores traditionally occupy a special place on the waterfront; it is unlikely that they would not be specifically mentioned by name if a provision in the bill of lading limiting liability was intended to extend to them. For the purposes of this decision, however, the court need not resolve the question whether the phrase "all persons rendering services" covers stevedores. Even if it were to be assumed that the limitation provisions in the instant bill of lading applied to the stevedores here they would still be precluded from its protective provisions because they were not rendering services in connection with Cabot's (i. e., *this*) contract, but were instead rendering services in connection with another shipper not a party in this action.

■ It is conceded by defendant that the damage to plaintiff's cargo occurred at a time well after plaintiff's cargo had been delivered to the ship and had already been safely stored in the hold. At the time of the accident defendant was engaged in loading into the hold cargo belonging to some shipper other than Cabot; the defendant was not at that time rendering any services in connection with Cabot's contract—the bill of lading with Moore-McCormack Lines, Inc. Defendant would have the court stretch the plain meaning of the words "this contract" to include other cargo loading operations for different shippers under different bills of lading on the rather novel theory that completion of the loading operation for the entire ship would benefit each of the individual shippers. In essence, at the expense of an unsuspecting shipper, the defendant is attempting to extract from a narrow clause of a bill of lading a blanket immunity the penumbrae of which can only be a matter of speculation. But the phrase "this contract" must be construed strictly and cannot be held to refer to anything but the bill of lading under which Cabot's cargo was to be shipped.

Accordingly, this court concludes that defendant McGrath is not entitled to the benefits of being termed a "carrier" under Section 2 [2] and therefore may not plead the $500 limitation in Section 13 as a defense to this action.[3]

The above is to be deemed the required findings of fact and conclusions of law.

Judgment for the plaintiff.

Settle order.

2. Cf. Cosa Export Co., Inc. v. Transamerican Freight Lines, Inc., 1968 AMC 1351. There defendant stevedore damaged the goods while unloading a truck. Although the bill of lading expressly included stevedores in the limitation section for work "in connection with the performance of any of the Carrier's obligations," the court held that:
    "In unloading from the truck, the stevedore was an independent contractor, with another independent contractor and, pursuant to the contract between them, the stevedore was not performing an obligation of the ocean carrier in loading or unloading and it is therefore not entitled to the benefit of the bill of lading limitation provision * * * [T]he [stevedore] was not [an] agent in connection with the independent business of the stevedore in the unloading from the truck, and the bill of lading expresses no such intent." At 1356–7.

3. Plaintiff argues that to include the stevedore in the limitation of liability provision is to render the bill of lading an illegal contract. Considering this court's determination of the ultimate issue, there is no need to discuss or pass on this issue.