CABOT CORPORATION and Cabot Argentina S.A.I.C., Plaintiffs-Appellees,

v.

S.S. MORMACSCAN, her engines, etc., Moore-McCormack Lines, Inc., Defendants,

and

John W. McGrath Corporation, Defendant-Appellant.

No. 392, Docket 33876.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1971.

Decided March 26, 1971.

ployed the appellant John W. McGrath Corp. The cases containing the turbogenerator were safely stowed in the No. 3 lower hold of the Mormacscan. However, in the course of loading heavy steel plates belonging to another shipper into the same hold, McGrath's employees dropped two of the plates onto appellees' turbogenerator, seriously damaging it.

McGrath stipulated that it had acted negligently in causing damage to Cabot's cargo and appellees thereupon discontinued their action against Moore-McCormack and elected to pursue their remedies exclusively against McGrath. McGrath invoked the $500.00 per package limitation contained in the bill of lading to limit its liability to that figure.

The district court, 298 F.Supp. 1171, held that the limitation clause contained in the bill of lading was inapplicable to shield appellant from liability to appellees for having negligently damaged appellee's cargo. The ground of the decision was that Cabot and McGrath were no longer in any contractual relationship at the time of the accident, since McGrath was not "rendering services in connection with Cabot's * * * contract [i. e. the bill of lading], but [was] instead rendering services in connection with another shipper not a party in this action." Although we affirm the judgment of the district court, we do so on the ground that the language of the limitation in the bill of lading does not include appellant-stevedore McGrath among those entitled to the benefit of the $500.00 limitation.

Clauses 2 and 13 of the bill of lading contain the relevant language which appellant claims gives it the benefit of the limitation.

Clause 2 provides as follows:

"In this bill of lading, the word 'ship' shall include any substituted vessel and any craft, lighter, or other means of conveyance owned, chartered, operated or used by the carrier

Martin J. McHugh, New York City (Maurice F. Beshlian, James M. Kenny, McHugh, Heckman, Smith & Leonard, New York City, on the brief), for defendant-appellant.

Martin B. Mulroy, New York City (Hill, Rivkins, Warburton, McGowan & Carey, New York City, on the brief), for plaintiffs-appellees.

Before HAYS and ANDERSON, Circuit Judges, and TYLER, District Judge.*

HAYS, Circuit Judge:

Appellee Cabot Corporation delivered a large turbogenerator and parts packed in skids and cases to Moore-McCormack Lines for transport aboard the S.S. Mormacscan under Moore-McCormack's bill of lading. Cabot had received a dock receipt making the shipment subject to the standard bill of lading then used by Moore-McCormack. For the job of loading the ship, Moore-McCormack em-

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

in performing this contract; *the word 'carrier'* shall include the ship, her owner, operator, demise charterer, time charterer, master and any substituted carrier, whether acting as carrier or bailee, and *all persons rendering services in connection with performance of this contract; * * *.*" (Emphasis added.)

and Clause 13 reads:

"In case of any loss or damage to or in connection with goods exceeding in actual value $500, lawful money of the United States, per package, or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per unit, on which basis the freight is adjusted and the *carrier's* liability in any capacity, if any, shall be determined on a value of $500 per package or per customary freight unit, unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper upon delivery to the carrier and inserted in this bill of lading and extra freight paid if required; and in such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed the declared value and the carrier's liability in any capacity, if any, shall not exceed the declared value. Whenever less than $500 per package or other freight unit, the value of the goods in the calculation and adjustment of claims shall, to avoid uncertainties and difficulties in fixing value, be deemed to be the invoice value, plus freight and insurance if paid, whether any other value be higher or lower." (Emphasis added.)

■ In this bill of lading, a contract of adhesion prepared by the carrier (see Caterpillar Overseas, S.A. v. SS Expeditor, 318 F.2d 720, 722 (2d Cir. 1963), cert. denied, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963)), limitations of liability are to be construed most strongly against the parties who introduced

them into the contract. The Caledonia, 157 U.S. 124, 137, 15 S.Ct. 537, 39 L.Ed. 644 (1895); Compania De Navigacion La Flecha v. Brauer, 168 U.S. 104, 118, 18 S.Ct. 12, 42 L.Ed. 398 (1897). In construing exculpatory language in a bill of lading on facts similar to ours, the Supreme Court said:

" * * * [C]ontracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they 'are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties.' Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123–24, 75 S.Ct. 649, 99 L.Ed. 933 (concurring opinion)."

Robert C. Herd & Co., Inc. v. Krawill Machinery Corp., 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959).

■ The language in the instant bill of lading does not exhibit the clarity required to extend the limitation of liability to the appellant-stevedore. Even if Cabot had actually received a copy of the bill of lading before delivery of the turbogenerator for shipping, it could not have ascertained from the ambiguous language employed whether the $500.00 limitation applied to the stevedore. One can only guess whether clause 13 which speaks in terms of the "carrier's liability in any capacity" is intended to incorporate the phrase "all persons rendering services in connection with performance of this contract" from clause 2, and, indeed, initially, whether "all persons rendering services" is designed to include stevedores loading the goods of another shipper.

■ While there is no doubt that the parties to a bill of lading may extend a contractual benefit to a third party by clearly expressing their intent to do so, Herd & Co. v. Krawill Machinery Corp., *supra* at 302, 79 S.Ct. 766, an intention to extend benefits of the limitation in

the present bill to the stevedore would most naturally have been expressed by the addition of the term "stevedore" to the long list of various persons included under the definition of "carrier" in clause 2. In Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y.), aff'd per curiam, 386 F.2d 839 (2d Cir. 1967), cert. denied sub nom. Carle & Montanari v. John W. McGrath Corp., 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968), the benefit of the $500.00 limitation was extended to the same stevedore involved here, but the bill of lading included the language "all agents and all stevedores." 275 F.Supp. at 78. The failure to include similar language here would lead one to believe that the protection of stevedores against liability was not intended. In any case such an intention was not expressed with sufficient "clarity of language."

Hufstedler, Circuit Judge, concurred in part, dissented in part and filed opinion.

■ We will "not stretch the language when the party drafting such a form contract has not included a provision it easily might have." The Monrosa v. Carbon Black Export, Inc., 359 U. S. 180, 183, 79 S.Ct. 710, 712, 3 L.Ed.2d 723 (1959).

Affirmed.