Alois RUPP, Plaintiff-Appellant,

v.

INTERNATIONAL TERMINAL OPERATING CO., INC., Defendant-Appellee, and

S.S. "MORMACSTAR", her engines, boilers, etc., Moore-McCormack Lines, Inc., and American Scantic Line, Defendants.

No. 442, Docket 72–2130.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 1973.

Decided May 7, 1973.

F. Herbert Prem, New York City (Bigham Englar Jones & Houston, New York City, on the brief), for plaintiff-appellant.

Robert H. Peterson, New York City (Frank H. Loomis, and Hill, Betts & Nash, New York City, on the brief), for defendant-appellee International Terminal Operating Co., Inc.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The sole issue on this appeal by a shipper from a judgment for cargo damage entered in his favor in the Southern District of New York, Milton Pollack, *District Judge*, to the extent the judgment limited the shipper's recovery against a stevedore to $500 per package pursuant to a limitation of liability clause in the ocean carriers' bill of lading, is whether the stevedore whose negligence caused the damage is entitled to the benefit of the limitation on the carriers' liability provided for in the bill of lading. The district court held that the stevedore was. We hold that the stevedore was not, since it was neither an express beneficiary under the limitation clause nor a beneficiary by operation of law. Accordingly, we reverse and remand for entry of a new judgment in favor of the shipper against the stevedore without regard to the limitation clause in the bill of lading.

I.

In May 1970, nine cases of automatic punch presses consigned to plaintiff Alois Rupp were delivered to the S.S. Mormacstar at Rotterdam for shipment to New York under a joint bill of lading issued by defendants Moore-McCormack Lines, Inc. (Mormac) and American Scantic Line (Scantic). The Mormacstar arrived at the port of New York the following month.

On June 10, she was discharging her cargo at Berth 70, Port Elizabeth, New Jersey. The Mormacstar was a roll-on, roll-off ("ro/ro") type vessel. She carried her cargo on flatbed trailers and on mounted containers. The discharge was performed by defendant International Terminal Operating Co. (ITO) pursuant to its written agreement to render stevedoring and terminal services which it had entered into with Mormac on April 1, 1968. During the discharge operation, an ITO hustler driver removed from the vessel to the stringpiece alongside the vessel a flatbed trailer loaded with the cases of punch presses consigned to Rupp. Another ITO hustler driver then backed up to engage the yard hustler to the flatbed trailer for removal to a storage area to await delivery to Rupp. When the yard hustler made contact, the left front landing gear of the flatbed collapsed, causing six of the cases to fall to the stringpiece. They were damaged to the extent of approximately $15,000.

On June 2, 1971, Rupp, invoking the admiralty and maritime jurisdiction of the district court, commenced this contract and cargo damage action. He alleged that Mormac and Scantic had failed to deliver the punch presses in good condition as required by the bill of lading and that ITO had caused damage to the goods through its negligence in discharging the cargo. In due course the pleadings were closed and discovery was completed.

On July 27, 1972, the parties filed a stipulation with the court that the sole issue to be determined was whether, as a matter of law, ITO was entitled to limit its liability to $500 per package, pursuant to the pertinent provisions of the ocean bill of lading issued by Mormac and Scantic. There being no issue of fact, the court took upon submission defendants' motion for a determination that their liability was limited by the bill of lading.

On September 15, 1972, the court filed a memorandum of decision holding that ITO was entitled to the benefit of the package limitation and directing the entry of judgment in favor of Rupp and against Mormac, Scantic, and ITO jointly and severally for the total sum of $3,000 ($500 for each of six packages), plus interest and costs.

Rupp appeals only to the extent that the judgment limits his recovery against ITO to $500 per package.

## II.

We must first decide whether the language of the bill of lading clearly indicates that ITO was an intended beneficiary of the limitation of liability clause.

Only two provisions of the bill of lading are pertinent. Clause 13, the basic limitation of liability clause, provides in relevant part:

"13. In case of any loss or damage to or in connection with goods exceeding in actual value $500, . . . per package, . . . the value of the goods shall be deemed to be $500 per package . . . and the carrier's lia-bility in any capacity, if any, shall be determined on a value of $500 per package. . . ."

Clause 2 defines "carrier" as follows:

"2. . . . [T]he word 'carrier' shall include the ship, her owner, operator, demise charterer, time charterer, master and any substituted carrier, whether acting as carrier or bailee, and *all persons rendering services in connection with performance of this contract.* . . ." (emphasis added).

The district court held that ITO was a person "rendering services in connection with performance of this contract" because it was acting on behalf of the carrier in the final phase of the delivery and deposit of the shipment in a storage area. We disagree. We hold that our decision in Cabot Corp. v. S. S. Mormacscan, 441 F.2d 476 (2 Cir.), cert. denied sub nom. John W. McGrath Corp. v. Cabot Corp., 404 U.S. 855 (1971), forecloses the result reached by the district court here.

In *Cabot,* we held that a stevedore was not an express third party beneficiary under a limitation of liability clause identical to the clause involved in the instant case. There the stevedore, after safely stowing the plaintiff's goods in a lower hold of the vessel, caused damage to such goods while loading into the same hold heavy steel plates belonging to another shipper. The district court in *Cabot* held that the limitation clause in the bill of lading did not shield the stevedore because he was not "rendering services in connection with Cabot's . . . contract, but [was] instead rendering services in connection with another shipper not a party in this action." Cabot Corp. v. S. S. Mormacscan, 298 F.Supp. 1171, 1174 (S.D.N.Y.1969). We affirmed but on another ground, namely, that the language of the limitation clause did not include the stevedore among those to be benefited by the $500 limitation:

"The language in the instant bill of lading does not exhibit the clarity required to extend the limitation of lia-

bility to the appellant-stevedore. . . . One can only guess whether clause 13 which speaks in terms of the 'carrier's liability in any capacity' is intended to incorporate the phrase 'all persons rendering services in connection with performance of this contract' from clause 2, and, indeed, initially, whether 'all persons rendering services' is designed to include stevedores loading the goods of another shipper.

While there is no doubt that the parties to a bill of lading may extend a contractual benefit to a third party by clearly expressing their intent to do so, . . . an intention to extend benefits of the limitation in the present bill to the stevedore would most naturally have been expressed by the addition of the term 'stevedore' to the long list of various persons included under the definition of 'carrier' in clause 2. . . ." 441 F.2d at 478–79.

■ We find our decision in *Cabot*—so far as the intended beneficiaries of the limitation of liability clause are concerned—to be indistinguishable from the instant case involving the identical limitation clause. We hold that ITO was not one of those intended to be protected by the limitation of liability clause in the bill of lading.[1]

Contrary to the assertion of ITO and the view of the district court below, we hold that our decision in Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d

934 (2 Cir. 1972), does not require a different result. In *Bernard Screen*, the bill of lading gave to all "legal entities" reasonably comprehended within its language, and specifically to "independent contractors", the benefit of a limitation of liability. We held that a negligent stevedore was entitled to the benefit of the $500 limitation of liability since he could be readily characterized as an "independent contractor." [2]

Decisions such as *Bernard Screen* turn on the language of the particular limitation of liability clause. The clause involved in *Bernard Screen* was substantially different from the ones involved in *Cabot* and in the instant case. Our decision here is consistent with the results reached there.

### III.

ITO further contends that, even if the bill of lading did not expressly extend the protection of the limitation of liability clause to stevedores, ITO nevertheless is entitled to the benefit of any contractual limits upon the liability of Mormac and Scantic because it was acting as their agent when the accident occurred. The New York courts have held that under some circumstances an agent of a carrier who performs any part of the work undertaken by the carrier, as provided in the contract of carriage, by reason of that fact alone is protected by the provisions of the contract limiting the liability of the carrier.[3] Berger v.

1. Our holding accords with the principles of construction expressed by the Supreme Court in Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 305 (1959), where the Court dealt with a limitation of liability clause similar to that here involved:

". . . [C]ontracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they 'are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties.' "

2. See also Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y.1967), aff'd, 386 F.2d 839 (2 Cir. 1967), cert. denied, 390 U.S. 1013 (1968) (stevedore entitled to benefit of limitation where clause included "all agents and all stevedores and other independent contractors whatsoever").

3. The New York courts have relied almost exclusively on Restatement (Second) of Agency § 347 (1958) which provides:

"An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal."

34th Street Garage, Inc., 3 N.Y.2d 701, 148 N.E.2d 883, 171 N.Y.S.2d 824 (1958) (garageman who stored overnight goods being shipped by a carrier); Howard v. Finnegan's Warehouse Corp., 33 App.Div.2d 1090, 307 N.Y.S.2d 1022 (3d Dept. 1970) (employee of common carrier); Schoeffer v. United Parcel Service, 277 App.Div. 569, 101 N.Y.S.2d 451 (1st Dept. 1950) (delivery company hired by storage company to deliver goods from storage).[4]

The Supreme Court, however, has rejected this agency principle as applied to stevedores and other agents of an ocean carrier. Herd & Co. v. Krawill Machinery Corp., *supra* note 1. In *Herd,* the stevedore contended that he was protected by the carrier's limitation on liability under the holding in A. M. Collins & Co. v. Panama R. Co., 197 F.2d 893 (5 Cir.), cert. denied, 344 U.S. 875 (1952). The court in *Collins* had extended the benefit of a limitation of liability clause to a stevedore on the same agency principle relied on in *Berger* and *Howard.* The Supreme Court in *Herd,* however, was unable to accept the reasoning of *Collins* because it was contrary to a long-settled line of its decisions:

> "The holding of the majority in *Collins* that the liability of a negligent agent of a carrier, though not limited by any statute or contract, is nevertheless limited by and to the extent of the limitation granted by the shipper to the carrier in the bill of lading, simply because the agent is performing some part of the work thereby undertaken by the carrier, is clearly contrary to the above-cited decisions of this Court." 359 U.S. at 305.

The Court in *Herd* held in effect that a stevedore or other third party is entitled to the benefit of a limitation of liability clause in a contract of carriage only if the clause expressly extends its benefits to such party.

4. In Leathers Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 817 (2 Cir. 1971), we noted with interest this "apparent New York rule", but we were care-ful to "express no views at this juncture as to the precise effect of that rule in the context of this case."

 We held in *Cabot* that a limitation of liability clause identical to the one involved here did not expressly extend its benefits to a stevedore. We hold here that ITO cannot claim the protection of the limitation of liability clause in the Mormac-Scantic bill of lading.

Reversed and remanded.