523 F.2d 518
 TOYOMENKA, INC., Plaintiff-Appellant,
v.
S.S. TOSAHARU MARU, her engines, boilers, etc.
YAMASHITA-SHINNIHON STEAMSHIP CO., LTD., d/b/a Y. S. Line,
Defendant and Third-Party Plaintiff-Cross-Appellant,
v.
INTERNATIONAL TERMINAL OPERATING CO., INC., and McRoberts
Protective Agency, Inc., Third-Party Defendants
and Cross-Appellants.
MARUBENI-IIDA (AMERICA), INC. and Murilspun, Ltd.,
Plaintiffs-Appellants,
v.
S.S. TOSAHARU MARU, her engines, boilers, etc.
YAMASHITA-SHINNIHON KISEN K.K. et al., Defendants and
Third-Party Plaintiffs-Cross-Appellants,
v.
INTERNATIONAL TERMINAL OPERATING CO., INC., and McRoberts
Protective Agency, Inc., Third-Party Defendants-Appellees.
 Nos. 627, 718, 1347 and 1348, Dockets 74-2297, 74-2325,
74-2365 and 74-2377.
 United States Court of Appeals,
Second Circuit.
 Argued May 6, 1975.
Decided Aug. 14, 1975.
 
 Martin B. Mulroy, New York City (Leo A. Cappelletti, and Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, on the brief), for plaintiffs-appellants Marubeni-Iida (America), Inc. and Murilspun, Ltd.
 Carmen A. Russo, and Vincent, Berg & Russo, New York City, for plaintiff-appellant Toyomenka, Inc.
 Joseph D. Ahearn, New York City (J. Robert Morris, New York City, on the brief), for third-party defendant-appellee McRoberts Protective Agency, Inc.
 Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 The contract provision to be construed on this appeal is no stranger to this Court. It is the $500 per package limitation of liability clause in an ocean carrier's bills of lading.
 
 
 2
 The issue arises this time on appeals by shippers from a judgment for cargo damage in their favor entered September 3, 1974 in the Southern District of New York, Kevin T. Duffy, District Judge, to the extent the judgment limited the shippers' recovery against an independent contractor of a stevedore to $500 per package pursuant to the limitation of liability clause in the ocean carriers' bills of lading. The district court held that the stevedore's independent contractor whose negligence caused the damage was entitled to the benefit of the limitation on the carriers' liability provided for in the bills of lading.
 
 
 3
 We hold that the independent contractor was not entitled to that limitation since it was not a beneficiary under the limitation of liability clause. Accordingly, we reverse and remand for entry of a new judgment in favor of the shippers without regard to the limitation clause in the bills of lading.
 
 I.
 
 4
 Cutting through the procedural morass that has nothing to do with the issue to be determined on this appeal, the relevant facts are simple, straightforward and essentially undisputed.
 
 
 5
 On July 27, 1970, the S.S. Tosaharu Maru tied up at Pier 6 in Brooklyn. It was owned by Yamashita-Shinnihon Steamship Co., Ltd. (the carrier). It had come from Japan. Its cargo consisted of woolen piece goods, in bales and cartons, consigned to the shippers, Toyomenka, Inc. (Toyomenka), Marubeni-Iida (America), Inc., and Murilspun, Ltd. (the latter two shippers referred to as Marubeni). All but one of the bales and cartons[1] were unloaded by the stevedore, International Terminal Operating Co., Inc. (ITO), pursuant to its contract with the carrier. The bales and cartons were placed in the bale area of the Pier 6 shed.
 
 
 6
 ITO had contracted with McRoberts Protective Agency (McRoberts) to guard the bales and cartons against being stolen or mislaid while they were in the pier shed awaiting delivery. The 42 bales and cartons here involved were found to be missing after they had been unloaded and placed in the pier shed.
 
 
 7
 In February and March 1971, the shippers, invoking the admiralty and maritime jurisdiction of the district court, commenced two cargo damage actions against the carrier, claiming non-delivery of the cargo of woolen piece goods.[2] The carrier in turn impleaded ITO and McRoberts in third-party complaints in each action, claiming indemnification on the ground that the loss was caused by negligence arising from a breach on the part of ITO and McRoberts of their warranties that the stevedoring and related terminal services would be performed in a workmanlike manner.[3] The pleadings in due course were closed.[4] The consolidated actions proceeded to trial.
 
 
 8
 On September 3, 1974, the court filed a memorandum of decision holding the carrier liable to the shippers but limiting the carrier's liability to $500 per package pursuant to the bills of lading. It directed entry of judgment in favor of Toyomenka in amount of $14,000 ($500 for each of 28 packages) and in favor of Marubeni in amount of $7,500 ($500 for each of 15 packages). It granted indemnification to the carrier against McRoberts in amount of $21,000, since it found that the loss of the bales and cartons[5] resulted from McRoberts' failure properly to guard them while they were in the pier shed awaiting delivery.[6]
 
 
 9
 The shippers appeal only to the extent that the judgment limits their recovery to $500 per package. On this appeal there is no issue with respect to the carrier's duty to deliver the cargo which had been consigned to the shippers, nor with respect to the carrier's limitation of liability to $500 per package under the bills of lading, nor with respect to the finding that the loss of the cargo in question resulted from McRoberts' negligence. The sole issue before us is the correctness of the court's holding that the shippers' recovery against McRoberts, an independent contractor of the stevedore, is limited to $500 per package under the terms of the bills of lading.
 
 II.
 
 10
 In construing the limitation of liability provision of the bills of lading now before us, as we have done many times before, it is important to bear in mind that we are dealing in a field where recognition of technical precision of language has been the benchmark of our decisions and those of the Supreme Court. Moreover, it must be remembered that the effect of this limitation of liability clause is greatly to reduce the liability of the beneficiary of the clause despite that party's negligence as against a shipper whose goods have been lost or damaged through no fault of his own. In short, in applying strict rules of construction, we do so without blinding ourselves to the equities.
 
 
 11
 It is axiomatic that parties to a bill of lading may extend the $500 limitation of liability to third parties. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 302 (1959); Cabot Corp. v. S.S. Mormacscan, 441 F.2d 476, 478-79 (2 Cir.), Cert. denied, 404 U.S. 855 (1971). Such a limitation of common law liability, however, must be clearly expressed. A bill of lading containing such a limitation will be strictly construed against the parties whom it is claimed to benefit. Herd & Co. v. Krawill Machinery Corp., supra, 359 U.S. at 305; Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123-24 (1955) (Frankfurter, J., concurring); Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934, 936 (2 Cir. 1972), cert. denied, 410 U.S. 910 (1973). For example, the Court in Herd held that "contracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they 'are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties.' " 359 U.S. at 305. And we have refused to extend such limitation of liability where the bill of lading is ambiguous as to the parties covered. Rupp v. International Terminal Operating Co., 479 F.2d 674, 676-77 (2 Cir. 1973); Cabot Corp. v. S.S. Mormacscan, supra, 441 F.2d at 478.
 
 
 12
 Applying these well established principles, we hold that the bills of lading in the instant case lack the clarity and precision required to permit an extension of limitation of liability to McRoberts.
 
 
 13
 The applicable limitation of liability clause in each of the bills of lading before us is Clause 37.[7] This clause does not extend the limitation to all stevedores and other independent contractors without qualification. Rather, by its terms it applies only to "all servants, agents and independent contractors . . . Used or employed by the Carrier for the purpose of or in connection with the performance of any of the Carrier's obligations . . ." (emphasis added).
 
 
 14
 McRoberts was not Employed by the carrier in the usual sense of that term. McRoberts was an independent contractor hired by the stevedore. We are not persuaded by the argument that the term "employed" should be given a broad construction and, along with the word "used", that it should be construed to mean "made use of" in furtherance of the duties of the carrier.
 
 
 15
 The portion of the first sentence of Clause 37 referred to above, which contains the express limitation of liability, must be read in conjunction with the last sentence of Clause 37 which, to the extent relevant, provides:
 
 
 16
 "It is hereby further expressly agreed that for the purpose of the foregoing provision the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or may be its servants, agents or independent contractors . . . and that all such persons shall to this extent be or be deemed to be parties to the contract contained or evidenced by this Bill of Lading."
 
 
 17
 This part of the clause makes it clear that those who are to be accorded limitation of liability as third party beneficiaries under the first part of the clause either must be parties to the contract or must be deemed to be such. This latter provision leaves no doubt as to who are the intended beneficiaries of the limitation of liability. They are specified as the carrier's servants, agents and independent contractors. Clearly, McRoberts was not a servant, agent or independent contractor of the carrier, but an independent contractor of the stevedore. Moreover, aside from the second sentence of Clause 37, the language of the first sentence lacks the clarity and precision which we previously have required. See Rupp v. International Terminal Operating Co., Inc., supra; Cabot Corp. v. S.S. Mormacscan, supra.
 
 
 18
 Since each case turns on the provisions of the particular bill of lading, we believe that McRoberts has placed mistaken reliance on our decisions in Bernard Screen, supra, And Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 386 F.2d 839 (2 Cir.), Aff'g 275 F.Supp. 76 (S.D.N.Y.1967), Cert. denied, 390 U.S. 1013 (1968). In each of those cases, which involved the question whether stevedores were the beneficiaries of the respective limitation of liability provisions, the clauses were distinctly different from those in the instant case. In Bernard Screen the clause provided that "no person, firm or corporation or other legal entity whatsoever (including . . . all agents and independent contractors) is, or shall be deemed to be, liable to the shipper or consignee as carrier, bailee or otherwise howsoever in contract or in tort"; and, in addition to this all-encompassing language, stevedores were expressly included in the limitation of liability provision. 464 F.2d at 935. In Carle & Montanari the clause included "all agents and all stevedores and other independent contractors whatsoever". 275 F.Supp. at 78.
 
 
 19
 We hold that McRoberts, an independent contractor of the stevedore, is not entitled to the $500 per package limitation of liability provided for in the ocean carrier's bills of lading. We therefore reverse and remand for entry of a new judgment in favor of the shippers without regard to the limitation clause in the bills of lading.[8]
 
 
 20
 Reversed and remanded.
 
 
 
 [1]
 The carrier admitted liability for the loss of one of the bales. This one never was unloaded
 
 
 [2]
 Toyomenka's claim was based on non-delivery of 28 cartons. Marubeni's claim was based on non-delivery of 15 bales (including the one referred to in note 1, supra )
 
 
 [3]
 ITO and McRoberts each filed cross-complaints. Each alleged that any loss was caused by the negligence and breach of contract on the part of the other and demanded, in the event of a judgment by the carrier or shippers against it, recovery against the other of the amount of the judgment together with costs and counsel fees incurred in defense of the action
 
 
 [4]
 Upon the consent of the parties, a pre-trial order was entered August 13, 1973 amending the pleadings to add ITO and McRoberts as defendants in the main actions originally commenced by Toyomenka and Marubeni. The shippers thus asserted against ITO and McRoberts direct liability for the loss
 
 
 [5]
 With the exception of the bale which never was unloaded, as to which the carrier admitted liability. See note 1, supra
 
 
 [6]
 No negligence on the part of ITO having been proven, the main action and the third-party complaint against it were dismissed
 The court did not rule on the issue of McRoberts' direct liability to plaintiffs Toyomenka and Marubeni. See note 4, supra. Since McRoberts' liability was limited to $500 per package, the same as that of the carrier, the court simply held that the carrier was liable to the shippers and allowed the carrier indemnification against McRoberts. This made it unnecessary for the court to reach the issue of McRoberts' direct liability. The court stated, "The plaintiffs and the third-party plaintiff having been accorded all that is due to them, I find it unnecessary to discuss the other claims of the various parties."
 
 
 [7]
 Clause 37 in each of the bills of lading provides as follows:
 "37. (Liability of Stevedores and Others) Without prejudice to any other provision hereof it is hereby expressly agreed that all servants, agents and independent contractors (including in particular, but not by way of limitation, any stevedores) used or employed by the Carrier for the purpose of or in connection with the performance of any of the Carrier's obligations under this Bill of Lading shall, in consideration of their agreement to be so used or employed, have the benefit of all rights, defences, exceptions from or limitations of liability or immunities of whatsoever nature referred to or incorporated herein applicable to the Carrier or to which the Carrier is entitled hereunder, so that in no circumstances shall any such servant, agent or independent contractor be under any liability greater than that of the carrier hereunder. It is hereby further expressly agreed that for the purpose of the foregoing provision the Carrier is or shall be deemed to be acting as agent or trustee on behalf and for the benefit of all persons who are or may be its servants, agents or independent contractors from time to time for the purpose of or in connection with the performance of any of the Carrier's obligations under this Bill of Lading, and that all such persons shall to this extent be or be deemed to be parties to the contract contained in or evidenced by this Bill of Lading."
 
 
 [8]
 Nothing in this decision is intended to preclude parties to a bill of lading from further refining the contract language so as to provide with clarity and precision their intention to extend the limitation of liability to specified third parties. In short, we believe that the problem with which we have dealt in this case can be easily averted in the future by the careful draftsmanship for which the admiralty bar is noted