574 F.2d 123
 SCHIESS-FRORIEP CORP., Plaintiff-Appellant,
v.
S. S. FINNSAILOR, her engines, boilers, etc., OY Finnlines
Ltd., Merivienti, O/Y, Defendants,
and
Universal Terminal and Stevedoring Corp., Defendant-Appellee.
 No. 694, Docket 77-7439.
 United States Court of Appeals,
Second Circuit.
 Argued March 2, 1978.
Decided April 7, 1978.
 
 John P. Conroy, New York City (McHugh, Heckman, Smith & Leonard, New York City, on brief), for plaintiff-appellant.
 Celestino Tesoriero, New York City (Grainger & Tesoriero, New York City, on brief), for defendant-appellee.
 Before ANDERSON, FEINBERG and TIMBERS, Circuit Judges.
 ROBERT P. ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal from the judgment granting defendant Universal Terminal and Stevedoring Corp.'s (Universal) motion for summary judgment and dismissing plaintiff Schiess-Froriep Corp.'s complaint, which alleged that a portion of a ship's cargo consigned to it had been damaged by Universal, on the ground that the action was barred by the time limitation contained in the bill of lading.
 
 
 2
 On November 6, 1973, the vessel S.S. Finnsailor arrived along side Shed 220, Port Newark, New Jersey, from Hamburg, Germany, carrying on board, with other cargo, two cases each of which contained a turret lathe consigned to Schiess-Froriep Corp. under bill of lading # 23, issued by OY Finnlines Ltd., the ocean carrier. The consignment was discharged from the vessel on November 8 by Universal, an independent contractor responsible for discharging the vessel's cargo and handling it while it remained at the terminal facility, under a separate contract with OY Finnlines, Ltd. and Merivienti, O/Y, who controlled the S.S. Finnsailor. On November 9, the trucking agent for Schiess-Froriep Corp. took delivery of only one of the two cases in question as the other had been damaged, either in the course of or subsequent to discharge, or during the loading of consignee's agent's truck.
 
 
 3
 On November 21, 1974, Schiess-Froriep commenced this action in admiralty against OY Finnlines Ltd., Merivienti, O/Y, and the S.S. Finnsailor[1] and in tort against Universal, alleging that it had been negligent in performing its duties as stevedore and terminal operator and in loading the cases onto consignee's truck.[2] Universal answered and moved for summary judgment. It alleged that as an independent contractor, it had the benefit of the limitation of liability provisions in the S.S. Finnsailor's bill of lading,[3] which incorporated the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300 et seq.,[4] including the one-year statute of limitations on suits for loss or damage to cargo. 46 U.S.C. § 1303(6). Universal argued, therefore, that because the second turret lathe should have been delivered on November 9, 1973, Schiess-Froriep's suit, filed on November 20, 1974, was time-barred.
 
 
 4
 Schiess-Froriep opposed the motion, alleging that the damage to the lathe occurred while Universal was loading the containers onto consignee's truck and that, in performing this function, Universal was acting as an independent contractor of consignee's agent, the trucker, and not of the carrier, and was not entitled to any benefit from the liability limitations of the bill of lading.[5]
 
 
 5
 Relying on the affidavits and supporting documents supplied by the parties, the district court held that, although it was not specifically known when the damage to the lathe occurred, Universal was acting as an independent contractor for the carrier, and, by virtue of the bill of lading, obtained the benefit of COGSA's one-year limitation period. Because the action was commenced more than one year after the date when the second turret lathe should have been delivered, the court concluded that Schiess-Froriep's action against Universal was barred.
 
 
 6
 On appeal, Schiess-Froriep contends that summary judgment was improperly granted because questions of fact exist as to when and how the damage to the lathe occurred and on whose behalf Universal was acting when loading the consignee's truck. While it may be that if the damage occurred while Universal was performing services on behalf of the carrier, e. g., as a stevedore discharging the vessel or as a terminal operator moving the containers within the pier area in order to make them accessible to the consignee, then the language of the bill of lading is sufficiently broad to extend to Universal COGSA's one-year statute of limitations, see Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934 (2d Cir. 1972), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y.), aff'd, 386 F.2d 839 (2d Cir. 1967) (per curiam ), cert. denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968); cf. Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F.Supp. 846 (S.D.N.Y.1965); Schiess-Froriep contends that the bill of lading should not be read so broadly as to extend its limitations to independent contractors who are performing work on behalf of the consignee and not for the carrier. See Toyomenka v. S. S. Tosaharu Maru, 523 F.2d 518 (2d Cir. 1975); Rupp v. International Terminal Operating Co., 479 F.2d 674 (2d Cir. 1973); Cabot Corp. v. S. S. Mormacscan, 441 F.2d 476 (2d Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971). In support of its position, Schiess-Froriep submitted an affidavit from its attorney which incorporated by reference a marine survey report prepared by its representative stating that on November 20, 1973, he was informed that "at the time of the delivery of the shipment, the lathe serial no. 1171-0188 was dropped while being loaded onto the truck, and, therefore, the lathe was left at the pier for inspection."
 
 
 7
 Universal, on the other hand, contends that there is no genuine issue of material fact in the case and that the entry of summary judgment in its favor was proper. Relying on a marine surveyor's report, dated December 10, 1973, attached as an exhibit to its attorney's affidavit, and on the delivery order of November 8, 1973, issued by Schiess-Froriep's customs broker, Universal argues that it has conclusively shown that it damaged the lathe on November 8, 1973, while moving the container from a stringpiece to another location in the port terminal. In any event, Universal takes the position that it was at all times, including its loading of the delivery truck, an independent contractor of the carrier, and it was, therefore, entitled to the protection of the bill of lading. See David Crystal, Inc. v. Cunard Steamship Co., Ltd., 339 F.2d 295 (2d Cir. 1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965); Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., supra.
 
 
 8
 The standards to be applied by the district court in deciding motions for summary judgment have been clearly articulated in this Circuit and need little repetition here. It must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, (citation omitted), with the burden on the moving party to demonstrate the absence of any material fact genuinely in dispute." Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317 (2d Cir. 1975); see also, United States v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976). Rule 56(e), F.R.Civ.P., requires that the moving party meet its burden by submitting affidavits made on personal knowledge, which set forth admissible evidentiary facts and affirmatively show that the affiant is competent to testify to the matters contained therein. United States v. Pent-R-Books, Inc., 538 F.2d 519 (2d Cir. 1976), cert. denied, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); Jaroslawicz v. Seedman, 528 F.2d 727 (2d Cir. 1975); see also, United States v. Bosurgi, supra; Union Insurance Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946 (2d Cir. 1965); Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800 (2d Cir. 1960); 6 Pt. 2 Moore's Federal Practice P 56.22(1).
 
 
 9
 In this case, the affidavit of Universal's counsel fails to comply with the Rule because it plainly is not based on personal knowledge of the affiant. Moreover, no affidavit from any witness thus qualified was offered or filed by Universal. The December 10 marine survey report, upon which Universal's attorney relies, is itself based on hearsay information insofar as it reports how the damage occurred, and is of no more use on this issue than the affidavit of Schiess-Froriep's counsel, who stated that his client's surveyor said that the damage occurred during truck loading. See Peter Pan Fabrics, Inc. v. Dixon Textile Corp., supra. The district court, itself, stated in its opinion, "it is not known specifically whether the damage occurred on the vessel or on the dock." The resolution of this question, however, is essential to the disposition of Schiess-Froriep's claim against Universal.
 
 
 10
 Neither party submitted any evidence to the district court regarding Universal's status while engaged in loading the delivery truck. At oral argument on appeal, the attorney for Schiess-Froriep asserted that truck-loading is a service separate and apart from the carrier's obligations under the bill of lading, and accordingly, that Universal was acting as an independent contractor for the consignee's trucker or the consignee while so engaged. Counsel for Universal responded that delivery was not complete until the containers had been loaded onto the truck, and, therefore, Universal was performing work under its contract with the carrier. Except for these assertions by counsel, the record is barren of any evidentiary or factual foundation for either claim. It is significant that neither attorney was able to inform the court who was paying Universal for its truck-loading services or whether a separate contract had covered this work. There was no testimony concerning the custom and usage in the maritime trade with regard to a carrier's obligation to place goods upon a consignee's delivery truck, once the goods had been discharged from the vessel and were stored on the pier in a location accessible to the consignee. The determination of these issues will necessarily have an effect on whether or not the terms of the bill of lading extended to Universal.[6]
 
 
 11
 This court has held that a bill of lading may limit the liability of third party stevedores or other agents or independent contractors of the carrier, see Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., supra ; but that such limitations are to be strictly construed against the party whom they are claimed to benefit. Toyomenka, Inc. v. S. S. Tosaharu Maru, supra; Cabot Corp. v. S. S. Mormacscan, supra ; see also, Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). The first paragraph of the bill of lading which extends its protections to "all agents and independent contractors" is ambiguous because it does not indicate whose agents and independent contractors are meant.[7] Cf. Toyomenka, Inc. v. S. S. Tosaharu Maru, supra, at 521-522 (an independent contractor of the stevedore is not entitled to the limitation of liability provided for in the ocean carrier's bill of lading); Cabot Corp. v. S. S. Mormacscan, 298 F.Supp. 1171, 1174 (S.D.N.Y.1969), aff'd, 441 F.2d 476 (2d Cir. 1971) (liability limitations of bill of lading not extended to stevedore loading goods of another shipper); Cosa Export Co., Inc. v. Transamerican Freight Lines, Inc., 1968 AMC 1351, cited in Cabot Corp. v. Mormacscan, 298 F.Supp. at 1174 n. 2 (stevedore loading or unloading truck is not performing an obligation of the ocean carrier and, therefore, is not entitled to benefit from the liability limitations of the bill of lading). Before this court is asked to give a final construction to the scope of this bill of lading, the parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting its ambiguous provisions. See Heyman v. Commerce and Industry Insurance Co., supra, at 1320; Painton & Company v. Bourns, Inc., 442 F.2d 216, 233 (2d Cir. 1971).
 
 
 12
 Accordingly, the judgment of the district court is reversed and the case is remanded to afford the parties the opportunity to present relevant evidence with respect to material factual issues.
 
 
 
 [1]
 Schiess-Froriep's claim against OY Finnlines Ltd., Merivienti, O/Y, and the S.S. Finnsailor for failure to deliver the container, in as good order and condition as when shipped, in violation of the contract of carriage was properly within federal admiralty jurisdiction. 28 U.S.C. § 1333; Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800 (2d Cir. 1971). This claim was settled between the parties and the action ordered discontinued by the district court on January 20, 1977
 
 
 [2]
 The district court was not asked, and evidently saw no need, to examine the jurisdictional underpinnings of Schiess-Froriep's action against Universal. The heart of the consignee's complaint is that the damage to the container was the result of Universal's negligence; and, therefore, it states a valid claim against Universal for tortious conduct. Such a claim is not within federal admiralty jurisdiction, see Leather's Best, Inc. v. S. S. Mormaclynx, supra, but does state a claim arising under state law. The district court had the power to entertain the state tort claim against the pier operator under the doctrine of pendent jurisdiction. Id. at 811. Alternatively, the consignee's complaint pleads jurisdiction based upon diversity of citizenship, as Schiess-Froriep is an Indiana corporation while Universal is a New York corporation, and the amount in controversy exceeds $10,000. There is, therefore, independent federal jurisdiction with respect to this claim. See 28 U.S.C. § 1332
 
 
 [3]
 Paragraph 1 of the carrier's bill of lading, in pertinent part, states:
 "It is understood and agreed that, other than shipowner or demised charterer, no person, firm or corporation or other legal entity whatsoever (including the master, officers and crew of the vessel and all agents and independent contractors ) is, or shall be deemed to be, liable with respect to the goods as carrier, bailee or otherwise howsoever in contract or in tort. If, however, it shall be adjudged that any other than said shipowner or demised charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other." (Emphasis added.)
 
 
 [4]
 Paragraph 21 of the bill of lading, providing that COGSA shall govern shipments prior to loading and subsequent to discharge, states:
 "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein . . . The provisions stated in the said Act shall (except as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods are in the custody of the Carrier."
 
 
 [5]
 Relying on Leather's Best, Inc. v. S. S. Mormaclynx, supra, Schiess-Froriep contends that the applicable statute of limitations is New York's three-year limitation on actions for injury to property. New York CPLR § 214(4). This reliance is misplaced. The cause of action in Leather's Best arose from the terminal operator's conduct in New York. In this action, brought by a nonresident of New York, concerning tortious conduct in New Jersey, the district court should apply New York's "borrowing statute," New York CPLR § 202, in determining the appropriate statute of limitations. Sack v. Low, 478 F.2d 360 (2d Cir. 1973); see also, Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Arneil v. Ramsey, 550 F.2d 774 (2d Cir. 1977)
 
 
 [6]
 This court has held that the contract of carriage persists after unloading and the carrier remains liable, not as a carrier but as a bailee, until it delivers the cargo to the consignee or places it in a public dock or warehouse. David Crystal, Inc. v. Cunard Steamship Co., 339 F.2d 295 (2d Cir. 1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965); Leather's Best, Inc. v. S. S. Mormaclynx, supra ; see also, Pittston Stevedoring Corp. v. Dellaventura, 544 F.2d 35 (2d Cir. 1976), aff'd sub nom. Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). From the state of the present record it appears that, by contracting to assume the care and custody of the cargo and to deliver it to the consignee or its agent, Universal was fully aware that it was likewise assuming the duties of a bailee, with an obligation to fulfill the duties of the carrier after the goods had been offloaded from the vessel and placed on Universal's pier or in its warehouse. But, we know of no authority which places the obligation on the carrier or its agent or independent contractor, in circumstances such as those in the present case, and absent a special contract so providing, to place cargo actually into the hands of a consignee by loading it onto the consignee's truck. See American President Lines Ltd. v. Federal Maritime Board, 115 U.S.App.D.C. 187, at 188, 317 F.2d 887, at 888 (1962); cf. Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, at 254 n. 4, 267 and n. 28, 272, 273, 97 S.Ct. 2348, 53 L.Ed.2d 320. The consignee is obligated to pick up the cargo at the pier or warehouse and remove it. Northeast Marine Terminal Co. v. Caputo, supra, at 255, 267, 274-75 n. 37, 97 S.Ct. 2348
 
 
 [7]
 The ambiguity is highlighted by the fact that the liability limitations of COGSA arguably extend to "any (one) other than" the carrier who may be adjudged to have "any responsibility with respect" to the goods. But, by virtue of paragraph 21 of the instant bill of lading, COGSA's liability limitations are available to these various parties only during the time "the goods are in the custody of the carrier." (Emphasis added.)