**TOKIO MARINE & FIRE INSURANCE CO., LTD., as Subrogee of Mitsubishi International Corp., and Mitsubishi International Corp., Plaintiffs,**

v.

**HYUNDAI MERCHANT MARINE CO., LTD., the M/V PACKING, her engines, tackle, etc.; Southern Pacific Railroad, Chicago, Milwaukee, St. Paul and Pacific Railroad Company and Faucher Bros. Cartage, Defendants.**

No. 86 C 4224.

United States District Court, N.D. Illinois, E.D.

June 23, 1989.

Warren J. Marwedel and Stephen C. Veltman, Tribler & Marwedel, Chicago, Ill., for plaintiffs.

Michael A. Snyder, Snyder & Gerard, Chicago, Ill., for Hyundai Merchant Marine, Inc.

Marvin F. Metge and Bruce C. Spitzer, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for Southern Pacific R.R.

Thomas F. Meyer, Soo Line Ry. Co., Chicago, Ill., for Chicago, Milwaukee, St. Paul & Pacific R.R. Co.

James M. Hoey and James R. Swinehart, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for Faucher Bros. Cartage.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs Tokio Marine & Fire Insurance Co., Ltd. ("Tokio"), as subrogee of Mitsubishi International Corp., and Mitsubishi International Corp. ("Mitsubishi") bring this action against defendants Hyundai Merchant Marine Co., Ltd. ("Hyundai"), M/V Packing, Southern Pacific Railroad, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, and Faucher Bros. Cartage (collectively "inland carriers") for damages sustained during the transportation of certain parcels. The inland carriers handled the shipment but were not parties to the original contract between Mitsubishi, the shipper, and Hyundai, the carrier. We review herein Hyundai's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Finding no issue of material fact as to maximum liability, that motion is granted. Maximum liability cannot exceed $500.

## FACTS

On May 31, 1985, Mitsubishi executed a contract with Hyundai for the shipment of three automatic assembly machines for blood-collecting needles from Yokohoma, Japan, to Chicago, Illinois. Prior to shipment, Hyundai issued an intermodal bill of lading—# YOCG–0900—to accompany the machines to Chicago. Pursuant thereto, Hyundai handled the ocean portion of the shipment and was permitted to subcontract out the remainder of the journey to others.

The machines were discharged from the vessel, M/V Packing, at the Port of Long Beach, California, and subsequently delivered by rail (via the Soo Line Railroad and Southern Pacific Railroad) and truck (Faucher Brothers) pursuant to separate contracts between those carriers and Hyundai. At some point during transportation, the machinery in container AMMU–200–290/0 sustained damage which remained undiscovered until arrival in Chicago. Through its freight forwarder, Mitsubishi gave timely notice of the damages to Hyundai and soon thereafter instituted this action against the vessel and all the carriers. Hyundai submits its motion for partial summary judgment contending that pursuant to the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* ("COGSA"), its maximum liability is limited to $500.

## DISCUSSION

### A. *The COGSA*

The COGSA governs all bills of lading evidencing the contract of "carriage of goods by sea ... to ports of the United States, in foreign trade". 46 U.S.C.App. § 1300. Paragraph 31 of the bill of lading at issue—YOCG–009900—explicitly invokes the strictures of the COGSA. That Act permits carriers to limit their liability to $500 per "package":

> Neither the carrier nor the shipper shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C.App. § 1304(5) (1982).

This limitation protects carriers who are often unaware of the value of goods they ship, and effectively requires shippers to bargain for greater protection. *Ulrich Ammann Building Equipment, Ltd. v. M/V Monsun,* 609 F.Supp. 87, 89 (S.D.N.Y. 1985). Accordingly, a shipper must be giv-

---

1. Plaintiffs' motion *in limine* alleging notice to Hyundai constituted notice to the other carriers, has been stayed pending resolution of the partial summary judgment motion.

en a "full and fair opportunity" to avoid or increase the $500 limitation. *Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 809 (9th Cir.1982).

### B. *Bill of Lading*

■ At the outset we note that Hyundai issued a "through" bill of lading. "A through bill of lading governs the entire transportation of goods and applies to connecting carriers even though they are not parties to the contract." *Marine Office of America Corp. v. NYK Lines*, 638 F.Supp. 393, 398 (N.D.Ill.1985). Whether a particular bill so qualifies is a question of fact, and the relevant indicia include whether the final destination is designated thereon, the method by which the connecting carriers are compensated and, more generally, the conduct of those carriers. *Id.* at 399.

■ Easy application of this standard renders the contract at issue a "through" bill of lading as a matter of law. Hyundai issued an intermodal bill to Mitsubishi and thereon designated Chicago as the final destination. That document explicitly contemplates the use of other carriers to handle the inland transportation. Hyundai made those arrangements and compensated the inland carriers. Most importantly, the bill of lading specifically refers to "through" transportation, *see* ¶ 27 ("Contemplation of Through Transportation"), and no other bills of lading were issued. In sum, the ocean and inland portions were covered by the same contract—Hyundai's "through" bill of lading.

■ Parties thereto may extend the contractual benefits to third persons if they clearly express their intent to do so. *See Generali v. D'Amico*, 766 F.2d 485, 488 (11th Cir.1985); *see, also Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 422 (5th Cir.1981). Such extensions are commonly called "Himalaya" clauses, and ¶ 27 appears to qualify:

**2.** We therefore need not entertain whether a "full and fair opportunity" to avoid or increase the limitation requires mere reference to the COGSA or an explicit discussion of the $500 limit.

when the goods are in the custody of the Inland Carrier it shall be entitled to all the ... limitations of and exoneration from liability ... granted to the carrier....

The bill of lading also delineates the relevant damage limitation:

the carrier shall not be liable for a loss or damage in an amount exceeding 100 pounds sterling.... In case the Bill of Lading covers the goods moving to or from ports of the United States ... [t]he words 100 pounds sterling shall be substituted by the words $500 in lawful currency of the U.S.A. per package....

¶¶ 30, 31. In short, the language of the bill is clear on its face.[2]

### C. *Hyundai, and the Protection Afforded Inland Carriers*

■ Mitsubishi does not claim it was given an insufficient opportunity to negotiate a limitation larger than $500, nor does it contend the machine that sustained damage constitutes more than one "package." It instead argues the $500 limit does not protect Hyundai because the latter failed to notify the inland carriers of the damage.

Paragraph 29 of the bill of lading provides that claims for loss or damage against the inland carriers must be filed within nine months after the delivery of the property. Mitsubishi reasons that by negotiating these particular terms in the bill of lading, Hyundai imposed upon itself a duty to notify the inland carriers of damage claims.[3] Having failed to do so, Mitsubishi claims Hyundai forfeited the $500 limitation.

At worst, Hyundai's failure to notify the inland carriers places it in their shoes—rendering it liable for only those damages to which the inland carriers would have been subjected had Hyundai given timely notice. And as previously mentioned, the bill of lading here at issue extends the $500 limit to the inland carriers. Standing in their stead, Hyundai can be liable for no more.

**3.** As explained *infra* fn. 4, the bill of lading merely provides that Hyundai was "authorized" to relay notice of claims to the inland carriers.

*Cortis Dow Corp. v. S.S. President Kennedy,* No. C–81–4859, slip op. (N.D.Cal. June 7, 1984), is not to the contrary. There, an ocean carrier contracted to deliver artificial kidneys from Florida to Japan. While in the possession of rail carriers to whom the inland portion of the transportation was subcontracted, the kidneys sustained damage. Cortis Dow, the shipper, notified the ocean carrier of the loss. The governing bill of lading required the latter to relay the notice to the rail carriers. When the ocean carrier failed to fulfill this duty, the rail carriers were relieved of all liability. The *Cortis Dow* court then found the $500 limitation inapplicable to the ocean carrier's new position. "Since APL [the ocean carrier] did not file a timely claim against the rail carriers for the damage, APL is liable as a rail carrier for the damage." Slip op. at 11.

That holding is perfectly consistent with our ruling above. The ocean carrier here, Hyundai, becomes liable as an inland carrier. The result differs from *Cortis Dow* because the bills of lading are distinct: the bill of lading at issue in *Cortis Dow* did not contain a provision extending the $500 limitation to the inland carriers, and that court feared penalizing the plaintiff for defendant's failure to give notice. Here, however, the terms of the bill of lading explicitly limit the liability of *all* carriers to $500. *See supra* at 1309. Thus, regardless of in whose shoes Hyundai stands—whether as an inland or ocean carrier—Mitsubishi is entitled to no more than $500.[4] Put another way, Hyundai's failure to notify the inland carrier did not injure the plaintiff.

The extension of a liability limitation to inland carriers is not without precedent. *See, e.g., Mori Seiki USA, Inc. v. M/V Shin Kashu Maru,* 702 F.Supp. 613, 614 (N.D.Tex.1988) (district court granting summary judgment limiting railroad liability to $500). While this result may seem harsh, the shipper can always contract for additional protection. Here, however, that option was not pursued. The plaintiff is stuck with its *existing* bargain, an essential component of which limits its damage claims to $500.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is granted.

---

4. That the bill of lading here is a "through" bill, renders substantial discussion of the other differences between this case and *Cortis Dow* unnecessary. For example, that court interpreted the bill of lading to *obligate* the ocean shipper to transmit a claim to the rail carrier. Here, however, the bill of lading *authorizes* Hyundai to accept claims on behalf of the inland carriers and further *authorizes* Hyundai to transmit the claim. *See* ¶ 29. Further, since the cargo in *Curtis Dow* was damaged prior to its receipt by the ocean-going vessel, the claim was governed by the Interstate Commerce Act, not the COGSA. *See* slip op. at 11.