**UNION CARBIDE CORP., Plaintiff,**

v.

**M/V MICHELE, her tackle, boilers, engines, etc., in rem and Kieserling America Corp., Defendants.**

**No. 89 CIV 7121 (LBS).**

United States District Court,
S.D. New York.

July 24, 1990.

As Amended July 27, 1990.

Mahoney & Keane (Joan Califf, of counsel), New York City, for plaintiff.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden (Caspar F. Ewig and Keith B. Dalen, of counsel), New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiff-shipper, Union Carbide Corporation ("UCC"), has brought suit against defendant-carrier, EKB Kierserling America Corp., alleging that the defendant is responsible for the contamination of a shipment of silicone resin valued at $200,000. The defendant has moved for partial summary judgment seeking to restrict its liability to $500 pursuant to title 46 § 1304(5) of the Carriage of Goods by Sea Act. For the reasons that follow, the defendant's motion is granted.

## BACKGROUND

On June 29, 1987, the plaintiff loaded a cargo of silicone resin into a 20 foot tank container which had been furnished by the defendant. *See* Griggs' Affidavit. According to G.W. Wulfert, plaintiff's quality control manager, one sample of the resin was taken before the shipment was loaded into the tank and a second was taken from the loading valve after the shipment was loaded. Neither analysis revealed any contamination. Wulfert Affidavit, ¶ 3. The defendant received the cargo at the shipper's plant in Sisterville, West Virginia and transported it to New York via truck. According to Sumner Griggs, truck driver for Transport Resources Inc., before he left the UCC plant, UCC employees inspected the tank and examined its valves. Griggs'

Affidavit, ¶ 2. In New York the cargo was loaded aboard the M/V MICHELE and then transported to Felixstowe, England. A sample taken in England before unloading was allegedly contaminated.

## DISCUSSION

■ There are three issues in dispute in this contract action. The first is whether section 11707 of the Interstate Commerce Commission ("ICC") applies to the inland transport of the tank container or whether the Carriage of Goods by Sea Act ("COGSA") applies to the entire journey. The second is whether the defendant's bill of lading limits the defendant's liability when transporting liquids shipped in bulk. The third is whether the plaintiff had a fair opportunity to declare excess value and failed to do so.

Before determining the extent of defendant's liability, this Court must first decide whether ICC or COGSA rules govern the transaction between these two parties. Clause 1(a) of defendant's bill of lading states:

> [T]his bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act ... [T]he provisions stated in said Act (except as otherwise specifically provided herein) shall govern *before* loading on and *after* discharge from the vessel and throughout the entire time the Goods are in the custody of the Carrier.

(emphasis added). Defendant states that this clause indicates that COGSA's provisions applied during the entire time that the cargo was in its custody, including the time it was in the possession of the motor carrier. Normally, COGSA applies from the time the goods are loaded on to the ship to the time that they are discharged from the ship. *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 314 (2d Cir. 1983). However, the parties may extend the coverage beyond the normal scope; when they do so, COGSA operates as a contractual term only. *Id.* at 307. In this case, it appears that the parties contracted to have COGSA apply to the transaction unless stated otherwise (see clause 1).

Plaintiff maintains that clause 6(b) of the defendant's bill of lading signifies that the ICC would govern the inland portion of the transport. Clause 6(b) provides in relevant part:

Whenever any stage of the combined transport is accomplished by any land or air Carrier, each such stage shall be controlled according to any law compulsorily applicable to such stage and according to the contracts, rules and tariffs of each participating Carrier, the same as if such contracts, rules and tariffs were fully set forth herein.

However, defendant cites clause 4(d) of its bill of lading as evidence of its intent to have COGSA govern the agreement in case of damage. That clause says:

If loss or damage occurs after receipt of the Goods or packages hereunder, and it cannot be determined from the records of the ocean Carrier or participating domestic or foreign Carrier(s) whether such damage or loss occurred during ocean, domestic or foreign carriage, it shall be conclusively presumed that the loss or damage occurred on board the vessel and while the Goods or packages were in the custody of the Carrier.

Plaintiff suggests that the contamination occurred when the shipment was loaded into the defendant's tank for transport to New York since it was received in "good order by the carriers and was contaminated when it arrived." Plaintiff's Brief at 11. According to a report cited by the plaintiff, the contaminate was probably in the tank before the silicone was loaded. *Id.* Plaintiff states though, that the question of at what stage of transport the shipment became contaminated is a material fact in dispute which would preclude our granting defendant's motion for partial judgment. However, plaintiff has offered no evidence that the contamination occurred during the journey to New York. The plaintiff by its own admission thoroughly inspected the defendant's tank, took samples of the silicone after it was loaded, and found no contamination present. Since plaintiff has not produced any evidence indicating whether the contamination occurred on land or at sea,

we conclude that plaintiff is bound by clause 4(d) of the bill of lading. Accordingly, we hold that COGSA applies to this transaction.

■ We must now determine whether or not the defendant did limit its liability to $500. Clause 29 of the defendant's bill of lading states in part that:

The Carrier's liability, if any shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the Goods and a valuation higher than $500 per package or per shipping unit shall have been declared by the shipper, before shipment and inserted in this Bill of Lading, and extra freight paid if required ... The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except goods shipped in bulk, and irrespective of the weight or measurement unit employed in calculating freight charges.

Where containers, vans, trailers, transportable tanks, flats, palletized units and other such packages *are not packed by the Carrier*, each individual such container, van, trailer, transportable tank, palletized unit and other such package including in each instance its contents shall be deemed a single package and Carrier's liability limited to $500 with respect to such package.

(emphasis added).

Plaintiff argues that when the bill of lading said that a "shipping unit" did not include "goods shipped in bulk," the defendant intended to create an exception to the $500 limitation on liability for items such as liquids, which are shipped in bulk. However, it is clear to us that the provision in clause 29 relating to "transportable tanks not packed by the carrier" refers specifically to liquids shipped in bulk. Thus, we find that by signing the bill of lading and then loading the liquid into the tank, the plaintiff consented to allow the defendant to limit its liability to $500.

■ Having decided that COGSA applies to this transaction as a contractual term,

this Court, in interpreting this contract between these two parties, must make sure that the defendant did not attempt to limit its liability below the floor allowed by COGSA. It is well settled that the purpose of COGSA was to set a reasonable figure "below which the carrier should not be permitted to limit his liability." *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 815 (2d Cir.1971). Title 46 § 1304(5) of COGSA provides as follows:

> Neither the carrier nor the shipper shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

The defendant did not attempt to limit its liability below $500 per customary freight unit. The customary freight unit in this case was the transportable tank since the freight charge was computed on a lump sum basis for the entire shipment. *See Ulrich Ammann Building Equipment Ltd. v. M/V MONSUN,* 609 F.Supp. 87 (S.D.N.Y.1985). Therefore, we find that the contract is enforceable since it does not violate COGSA. The defendant's liability is limited to $500 whether we consider the tank a "package," as defined by the provisions in the end of clause 29 or a customary freight unit, as defined by COGSA.

■ The final issue that this Court must address is whether or not the plaintiff was justified in believing that it was not required to declare excess value. Plaintiff posits two arguments. First, plaintiff claims, clauses 1 and 29 led it to believe that plaintiff's liquid shipped in bulk was covered for its full value rather than being subject to the $500 limitation for packages and shipping units. We have already stated that we do not believe that a reasonable interpretation of those clauses supports such a conclusion.

Plaintiff's second argument is also untenable. Plaintiff asserts that since the defendant's bill of lading did not have a space for plaintiff to declare excess value, plaintiff was not afforded a fair opportunity to do so. We find this reasoning unsupportable in light of the provisions in the bill of lading and the fact that the plaintiff is an experienced shipper which should have known that excess value must be declared in any standard bill of lading. Additionally, both COGSA and the defendant's bill of lading explicitly stated that liability will be limited to $500 unless excess value is declared. Although it is unusual that the defendant's bill of lading did not have a space to insert excess value, it does not logically follow that the defendant did not want clients to follow the instructions on its own bill of lading. Plaintiff's reliance on a recent Second Circuit case stating that a carrier must provide a shipper with a fair opportunity to declare excess value is misplaced. In *General Electric Co. v. M/V NEDLLOYD,* 817 F.2d 1022 (2d Cir.1987), the Court observed that:

> a space is *usually* provided on the bill of lading for a shipper to use in declaring excess value ... Prima facie evidence of that [fair] opportunity is established when it can be gleaned from the language contained in the bill of lading.

*Id.* at 1024, 1029. (emphasis added). We find no indication in that decision that the presence of a space on the front of the bill of lading was the crucial factor in that court's decision. It is more important that the plaintiff knew that COGSA governed the transaction and that the defendant's bill of lading specifically discussed the declaration of excess value in Clause 29. For that reason, we hold that plaintiff had a fair opportunity to declare the value of its goods. Since plaintiff failed to do so, the defendant's liability is limited to $500.

### CONCLUSION

For the foregoing reasons the defendant's motion for partial summary judgment limiting its liability to $500 is granted.

SO ORDERED.