**LUCKY–GOLDSTAR INT'L (AMERICA), INC.,**
Plaintiff,

v.

**S.S. CALIFORNIA MERCURY, her engines, boilers, etc., Mitsui O.S.K. Lines Ltd., Haniel Container Service and Consolidated Rail Corporation, Defendant.**

No. 89 Civ. 8591 (PKL).

United States District Court,
S.D. New York.

Nov. 7, 1990.

Donovan, Parry, Walsh & Repetto, New York City (James J. Ruddy, of counsel), for plaintiff.

Michael J. Siris, New York City, for defendant Consolidated Rail Corp.

Haight, Gardner, Poor & Havens, New York City (Charles B. Anderson, Ara A. Shimshidian, of counsel), for defendant Haniel Container Service.

Kirlin, Campbell & Keating, New York City (Kevin J. Hartmann, of counsel), for defendant Mitsui O.S.K. Lines, Ltd.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiff seeks $62,500 for damage to a machine that allegedly occurred while the machine was in transit between Busan, Korea, and South Kearny, New Jersey. Defendant Consolidated Rail Corporation ("Conrail"), has moved for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking to limit its potential liability to $500 under 46 U.S.C.App. §§ 1300–1315, the Carriage of Goods by Sea Act ("COGSA").

## BACKGROUND

Plaintiff Lucky–Goldstar Int'l (America), Inc., ("Lucky"), seeks recovery of $62,500 from the above-named defendants for damage to an injection molding machine (the "shipment"), which allegedly occurred during a three-stage journey from Busan, Korea to Seattle, from Seattle to Chicago, and from Chicago to South Kearny, New Jersey.

On December 8, 1988, Lucky delivered the shipment to defendant, Mitsui O.S.K. Lines ("Mitsui"), at a container yard in Busan, Korea. Affidavit of Ara A. Shimshidian, Esq., sworn to on July 19, 1990 ("Shimshidian Aff.") ¶ 4. At the container yard, the shipment was packed into a container and loaded onto the ship M/V California Mercury for transport to Seattle, Washington.

Before the shipment left Korea, two bills of lading were issued. The first was issued to Lucky by Haniel Container Service ("Haniel"). The Haniel bill of lading designated Lucky's Korean office as the shipper and Lucky's New Jersey office as the consignee. Haniel Bill of Lading No. 88US12016, Affidavit of Michael J. Siris, Esq., sworn to on June 20, 1990 ("Siris Aff."), Exh. D. The second bill of lading was issued to Uni–International Co., Ltd. ("Uni"), as the shipper on behalf of Lucky, and designated Haniel's New York office as the consignee. Mitsui Bill of Lading No. M112–01114 (the "Mitsui Bill of Lading"), Siris Aff., Exh. C.

The shipment arrived in Seattle on December 21, 1988. MOL Intermodal, Inc. ("MOL"), a non-party, arranged for the shipment to be carried by rail from Seattle to South Kearny, New Jersey. MOL contracted with two railroads to carry the shipment to South Kearny. Pursuant to those contracts, Burlington Northern Railroad Company (BNR) transported the shipment from Seattle to Chicago, where it was transferred to Conrail. Conrail then carried the shipment from Chicago to South Kearny, the final destination.

Upon arrival of the shipment at South Kearny, Conrail employees noted that it was severely damaged. Shimshidian Aff., Exh. E. Lucky thereafter commenced this action on December 28, 1989.

Conrail now seeks a determination by the Court that Conrail's total potential liability is limited to $500, as provided by COGSA. Conrail argues that although COGSA's liability limitations usually apply only to marine transportation, those limitations may be, and have been, extended to Conrail under a clause in the Mitsui Bill of Lading protecting Mitsui's agents, servants, and subcontractors.

Lucky, Mitsui and Haniel argue that, as a matter of law, defendant is not entitled to partial summary judgment for several reasons. First, COGSA directly applies only during marine transport. Second, the Mitsui Bill of Lading clause extending protection to Mitsui's agents and subcontractors can be construed not to include railroads.

Third, Conrail has failed to present evidence to establish that it was a "sub-contractor" of Mitsui.

In addition, Haniel argues that Conrail is not entitled to partial summary judgment because it failed to comply with Rule 3(g) of the Civil Rules of this Court, which requires the party moving for summary judgment to submit a brief statement setting out what it views as the non-disputed material facts in the case.

## DISCUSSION

### I. *Conrail's Failure to File a 3(g) Statement*

■■■ Before considering the substantive aspects of Conrail's motion, the Court must address Haniel's procedural argument that Conrail's motion should be denied because Conrail failed to comply with Local Civil Rule 3(g). Rule 3(g) requires the movant to submit with a motion for summary judgment "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Failure to comply with Rule 3(g) may "constitute[ ] grounds for denial of the motion." Civil Rule 3(g); *see Watson v. Scully*, 87 Civ. 571 (CSH), 1988 WL 142458 (S.D.N.Y. Dec. 27, 1988).

While Conrail did not initially submit a 3(g) statement with its motion, it has provided the Court with supporting affidavits. These affidavits, considered with Conrail's moving papers, Lucky's brief and affidavit in response, and the briefs and affidavits of the two co-defendants, clearly establish the scope of Conrail's motion. Where the facts required by the 3(g) statement can be gleaned from other documents submitted in support and opposition to the motion, failure to comply with Rule 3(g) does not compel denial. *See Miller v. Swissre Holding Inc.*, 731 F.Supp. 129, 130 (S.D.N.Y.1990) (declining to dismiss for failure to submit 3(g) statement). Moreover, Conrail has submitted the necessary 3(g) statement with its reply.

While the Court does not intend to condone a lack of timely compliance with Rule

3(g), it would serve no purpose to deny this motion on the basis of this minor procedural error, particularly where no prejudice to the other parties to the litigation has been shown. Therefore, the Court will not deny Conrail's motion for failure to comply with Rule 3(g).

## II. *COGSA's Application to this Case*

The purpose of COGSA is to balance the interests of carriers and shippers. *Leather's Best, Inc. v. S.S. Mormaclynx,* 313 F.Supp. 1373 (E.D.N.Y.1970), *aff'd in part and rev'd in part on other grounds,* 451 F.2d 800 (2d Cir.1971). To this end, § 1304(5) limits the liability of a carrier or ship to an amount not to exceed $500 per package, unless a value of the goods in excess of $500 has been declared by the shipper before shipment, and has been inserted in the bill of lading. Neither party contends that Lucky claimed any valuation of the shipment in excess of this statutory limit, such that the limit would not apply.

### A. Direct Application of COGSA Protection to Conrail

■ Absent contractual extension, COGSA's liability limit is applicable only to "carriers" and "ships." A "carrier" is defined by COGSA as "the owner or charterer who enters into a contract of carriage with the shipper." 46 U.S.C. § 1301(a). A "ship" is defined by COGSA as "any vessel used for the carriage of goods by sea." 46 U.S.C. § 1301(d). In this case, the "carrier" was Mitsui, the "ship" was the M/V California Mercury, and the "shipper," as named in the Mitsui Bill of Lading, was Uni, acting on behalf of Lucky–Goldstar. *See* Siris Aff., ¶ 8; Mitsui Bill of Lading, ¶ 1 (explicitly naming Mitsui as the "carrier").

Because it has failed to establish—or even claim—that it was either a "carrier" or a "ship," Conrail has not shown that the protection of COGSA is directly applicable to it. Conrail has not established that it had a direct contractual relationship with

Uni, the shipper, and thus Conrail cannot be considered a "carrier" under the statute. Similarly, Conrail's rail cars obviously cannot be considered "ships." Consequently, Conrail is not directly entitled to COGSA protection.

### B. Contractual Extension of COGSA Protection to Conrail Under the Mitsui Bill of Lading

■ Conrail argues that although COGSA does not *directly* apply to it, COGSA's protection was contractually extended to it in Clause Five of the Mitsui Bill of Lading. Parties to a bill of lading can include in the bill a "Himalaya" clause [1] to extend contractually COGSA liability protection to third parties that would not otherwise fall within the scope of the statute. *Robert C. Herd & Co. v. Krawill Mach. Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *Toyomenka, Inc. v. S.S. Tosaharu Maru,* 523 F.2d 518 (2d Cir.1975); *Cabot Corp. v. S.S. Mormacscan,* 441 F.2d 476, 478–79 (2d Cir.), *cert. denied,* 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971).

■ Clause Five of the Mitsui Bill of Lading is such a Himalaya clause. It provides, in part, that

> [t]he Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods.... [E]very such servant, agent and sub-contractor shall have the benefit of all provisions herein for the benefit of the Carrier as if such provisions were expressly for their benefit.

Conrail argues that it was a Mitsui sub-contractor, and that therefore it falls within Clause Five, providing it with the same limited liability Mitsui enjoys under COGSA. Conrail, however, has not met its burden of showing that the parties to the Mitsui Bill of Lading clearly intended Conrail to be a third-party beneficiary of the contract between them. Restatement (Second) of Contracts § 302(1) (1981).

---

1. This type of clause in a bill of lading is named for the steamship "Himalaya" involved in the case of *Adler v. Dickson,* 1 Q.B. 158 (1955). *See*

*Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 417 n. 5 (5th Cir.1981) (discussing *Adler* ).

In discussing the standard that the courts should apply in reviewing bills of lading purporting to extend COGSA protection beyond the carrier or ship, the Supreme Court has held that, "contracts purporting to grant ... limitation from liability must be strictly construed and limited to intended beneficiaries, for they 'are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties.'" *Robert C. Herd & Co., supra*, 359 U.S. at 305, 79 S.Ct. at 771 (quoting *Boston Metals Co. v. The Winding Gulf*, 349 U.S. 122, 123–24, 75 S.Ct. 649, 650–51, 99 L.Ed. 933 (1955) (Frankfurter, J., concurring)). Similarly, the Second Circuit has held that although the $500 liability limit provided by COGSA may be extended to third parties, "[s]uch a limitation of common law liability ... must be clearly expressed. A bill of lading containing such a limitation will be strictly construed against the parties whom it is claimed to benefit." *Toyomenka, supra*, 523 F.2d at 520–21 (citations omitted).

Conrail has not provided any convincing evidence regarding Lucky's, Mitsui's or Haniel's intentions with respect to which parties should be afforded limited liability. The language of Clause Five is not sufficient, by itself, to extend protection to Conrail without clear evidence of the parties' intent to do so. *See Rupp v. International Terminal Operating Co.*, 479 F.2d 674, 676–677 (2d Cir.1973) (refusing to extend liability limitations where the bill of lading is ambiguous as to the parties covered). "[D]isputed questions regarding the parties' intentions should not be adjudicated on a motion for summary judgment based on affidavits and depositions but rather should await trial." *Savarin Corp. v. National Bank of Pakistan*, 290 F.Supp. 285 (S.D.N.Y.1968), *aff'd*, 447 F.2d 727 (2d Cir. 1971).

Furthermore, the field of international shipping is particularly noted for the exactitude of its documentation. "[I]t is important to bear in mind that we are dealing in a field where recognition of technical precision of language has been the benchmark." *Toyomenka, supra*, 523 F.2d at 520 (finding bills of lading lacked sufficient clarity and precision to permit extension of limited liability under COGSA). Thus, when construing admiralty contracts, the Court may "not stretch the language when the party drafting such a form contract has not included a provision it easily might have." *The Monrosa v. Carbon Black Export, Inc.*, 359 U.S. 180, 183, 79 S.Ct. 710, 712, 3 L.Ed.2d 723 (1959).

If the parties to the Mitsui Bill of Lading had intended to include Conrail among those protected by Clause Five, little effort would have been required for them to have added to that clause the term "inland carriers," for example. *See, e.g., Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.*, 717 F.Supp. 1307, 1309 (N.D.Ill. 1989) (where Himalaya clause expressly extends COGSA protection to "inland carrier," railroad is protected). The absence of the phrase "inland carriers" in Clause Five is particularly significant considering the fact that the term is used elsewhere in the bill of lading. *See Royal Insurance v. Westwood Transpacific Service*, No. C–88–832M (W.D.Wash. April 25, 1990) (absence of any explicit reference to "inland carriers" in Himalaya clause is of particular significance where term is used elsewhere in bill of lading, distinguishing *Tokio Marine, supra*, 717 F.Supp. 1307, and finding railroad not entitled to COGSA protection). Clause Twenty, for example, uses the term "inland carriers" in discussing delivery of the shipment. Similarly, Clause Seven uses the narrow phrase "carriage by ... inland waterways" rather than the broader phrase "inland carriage" or "inland transportation." If the parties had intended to extend Clause Five of the Mitsui Bill of Lading to inland carriers such as Conrail, the Court would expect to find explicit language to that effect. Absent such language or any other proof of the parties' intentions, the Court must find that Conrail has failed to prove that it falls within the

protection of Clause Five.[2]

Conrail has likewise failed to provide any evidence to establish that the parties intended Clause Five's protection of Mitsui's "servant[s], agent[s] and sub-contractor[s]" to include parties, such as Conrail, that contracted not with Mitsui, but rather with a separate entity such as MOL. Moreover, Conrail has not clearly established the nature of its relationship with MOL or the nature of the relationship between MOL and Mitsui. Consequently, since Conrail has not established satisfactorily either the intended scope of the term "sub-contractor," or the nature of its position in the contractual chain, its motion for summary judgment must be denied.

The cases cited by Conrail in support of its motion are distinguishable from the present case. For example, Conrail cites *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415 (5th Cir.1981) as bringing it within the range of COGSA protection. In that case, however, the stevedores claiming COGSA protection were specifically mentioned in the bill of lading. *Brown & Root, supra*, 648 F.2d at 418. Similarly, *Secrest Machine Corp. v. S.S. Tiber*, 450 F.2d 285 (5th Cir.1971), is also inapposite here. In *Secrest*, the Fifth Circuit granted stevedores protection under § 1304(5) based on the finding that stevedores came within the protection afforded in the bill of lading to "carrier's agents and independent contractors performing carrier's obligations." In that case, however, the stevedores had contracted with the carrier directly, whereas here Conrail contracted with MOL. Since, as discussed above, the scope of the term "sub-contractor" as it is used in Clause Five is unclear, *Secrest* is distinguishable from the case at bar.

Finally, Conrail relies on *Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.*, 717 F.Supp. 1307 (N.D.Ill.1989). In *Tokio*, however, the relevant clause explicitly referred to "inland carriers" as ben-

eficiaries of the liability limitations. In this case Clause Five makes no such allowance.

## CONCLUSION

Conrail has failed to establish that it is directly protected by COGSA. Similarly, Conrail has failed to show with sufficient specificity any relationship with Mitsui which brings Conrail within the protection of Clause Five of the Mitsui Bill of Lading. Strict construction of the terms of the Mitsui Bill of Lading is mandated by precedent, and specific language recognizing Conrail as a contractually contemplated protected party has not been shown. Accordingly, Conrail's motion for partial summary judgment is denied.

SO ORDERED.

---

**2.** Conrail also argues that the case *Mori Seiki USA, Inc. v. M/V Shin Kashu Maru*, 702 F.Supp. 613 (N.D.Tex., 1988) supports its argument. In *Mori Seiki* the District Court for the Northern District of Texas allowed a railroad to claim the protection of 46 U.S.C.App. 1304(5) without a

specific contractual provision. That case is of questionable significance, however, because the motion there was decided without the benefit of responding papers, and the contractual relationship between the ocean carrier and the railroad was never explored.