**TOSHIBA INTERNATIONAL CORP., Plaintiff,**

v.

**M/V "SEA–LAND EXPRESS," her engines, boilers, etc., Sea–Land Service, Reynolds Leasing Corp., and Burlington Northern Railroad Company, Defendants.**

**No. 91 Civ. 8609 (PNL).**

United States District Court, S.D. New York.

Jan. 10, 1994.

---

Bigham Englar Jones & Houston, New York City (John E. Cone, Michael K. Rappaport, of counsel), for plaintiff.

Haight, Gardner, Poor & Havens, New York City (Chester D. Hooper, A. Andrew Tsukamoto, of counsel), for defendants Sea–Land Service, Inc. and Reynolds Leasing Corp.

Gutterman & Carcich, New York City (Barry N. Gutterman, of counsel), for defendant Burlington Northern R. Co.

## OPINION AND ORDER

Findings of Fact and Conclusions of Law.

LEVAL, Circuit Judge.*

Toshiba International Corp. brings action against Sea–Land Service, an ocean carrier, and Burlington Northern Railroad Company, a rail carrier, for damage in the amount of approximately $272,000 sustained by cargo in transit. Trial has been submitted on a written record on the question whether the $500

* Sitting by designation.

per package damage limitation provided in the bill of lading effectively limits the exposure of the defendants.

### Background

In late 1990, Toshiba shipped two cartons containing a turbine generator and related equipment (collectively "the turbine") from Yokohama, Japan, to New York. On November 24, 1990, Sea–Land issued a bill of lading to Toshiba which listed the destination of the cargo as New York. The cargo was received by Sea–Land in Yokohama in good condition, and the goods were carried aboard the SEA–LAND EXPRESS from Yokohama to Tacoma, Washington. On December 5, 1990 in Tacoma, the cargo was transferred to Burlington Northern (BN) for transportation by rail to Chicago, where it was to be transferred by truck to Conrail for rail transportation to New York and delivery to the consignee.

A trucking company was employed to transport the cargo across Chicago from BN's terminal to Conrail's terminal. During this cross-town transportation, on December 9, 1990, the container was apparently "low-bridged," resulting in substantial damage to the turbine.[1] Conrail refused to accept the container because it was visibly damaged, and it was redelivered by the trucker to the BN hub. The cargo was then recoopered, recrated, and redelivered to Conrail, which accepted it for shipment to New York. The trucker that hit the bridge is not a party to the action.[2]

### Discussion

 The provisions of the Carriage of Goods by Sea Act, (COGSA) 46 U.S.C.App. § 1300 *et seq.*, govern the shipment of goods

from foreign ports to the United States and expressly provide for a $500 per package liability limitation. COGSA covers "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.App. § 1301(e). However, the provisions of COGSA may contractually be extended past the time of discharge of the cargo from the ship. *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313, 314 (2d Cir.1983). It is also well-settled that the protections of COGSA and other provisions of the bill of lading may contractually be extended to third party agents of the carrier, such as inland carriers. *See, e.g., Lucky–Goldstar v. S.S. California Mercury,* 750 F.Supp. 141 (S.D.N.Y.1990) and cases cited therein. *See also Seguros Illimani S.A. v. M/V POPI P,* 929 F.2d 89, 93 (2d Cir.1991) (extension of bill of lading protections to stevedores upheld);[3] *Toyomenka, Inc. v. S.S. Tosaharu Maru,* 523 F.2d 518, 520 (2d Cir.1975) ("It is axiomatic that parties to a bill of lading may extend the $500 limitation of liability to third parties.") The clause in a bill of lading that extends the carrier's protection to such other entities is referred to in the admiralty bar as the "Himalaya clause."[4]

### A. Sea–Land's Liability

 Paragraph 17 of the bill of lading, under the caption "Valuation," provides:

In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United states, per package, or in case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500 per package or unit,

---

1. Sea–Land and Burlington each allege that the other hired the trucking company that actually performed the ill-fated cross-town drayage.

2. In their trial briefs, the parties dispute whether the issue of the timeliness of Sea–Land's cross-claim against Burlington Northern was deferred by this court. This issue was expressly deferred by written order dated January 8, 1993, signed by all three parties.

3. When so extended, the bill of lading clauses and the incorporated COGSA provisions function purely as contractual terms, and not otherwise

by force of law. *See Seguros, supra; Colgate Palmolive, supra.*

4. This name derives from the steamship "Himalaya" which was involved in *Adler v. Dixon,* [1955] 1 Q.B. 158 (C.A.1954). As bills of lading are contracts of adhesion, Himalaya provisions and limitations of liability are strictly construed against the carrier and its agents. *See, e.g., Allied Chemical v. Companhia de Navegacao,* 775 F.2d 476, 482 (2d Cir.1985), *Lucky–Goldstar, supra,* at 145.

unless the nature and higher value of the goods have been declared by the shipper and higher charges paid as provided in Carrier's tariff ... When the U.S. Carriage of Goods by Sea Act does not apply of its own force to goods not shipped in packages, the $500 limitation shall apply to each shipping or customary freight unit or piece, provided always that any compulsorily applicable limitation shall apply in place of the $500 limitation.

The front of the bill of lading makes clear that Toshiba chose not to declare a higher value for its cargo. No value was entered in the space provided to enter a "declared value." Additionally, a printed provision in the declared value space provided that "If shipper enters a value carrier's 'package' limitation of liability does not apply and the *ad valorem* will be charged." Toshiba chose not to declare a higher value and not to pay a higher *ad valorem* rate. The terms of the contract between Sea–Land and Toshiba thus provide that Sea–Land is protected by the $500 per package limitation.[5]

The bill of lading furthermore effectively dissipates any contention that the limitation ceased to protect Sea–Land when the goods passed out of its custody into the hands of the rail carrier. The initial clause on the back of the bill of lading provides that the shipper agrees that:

> the receipt, custody, carriage, relay, delivery, and any transhipping of the goods are subject to the terms appearing on the face and back hereof, which shall govern the relations, whatsoever they may be, between shipper, consignee, the owners of the goods and any holder hereof and Carrier, its agents, contractors, employees, master and vessel and every contingency occurring and whether Carrier be acting as such or bailee.

Toshiba contends that the "Clause Paramount" renders Sea–Land's damage limitation applicable only to the period when the goods were in Sea–Land's "actual custody." The Clause Paramount provides that:

> This bill of lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 36, 1936, as if set forth herein. The defenses and limitations of said act shall apply to goods whether carried on or under deck, to carriage of goods between U.S. ports or between non-U.S. ports, before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods are in the actual custody of Carrier whether acting as carrier, bailee or stevedore.

The argument is not persuasive; it misstates the import of this clause. The language in question asserts that the defenses and limitations "of *said act* shall apply ... [when] the goods are in the actual custody of Carrier...." It does not say, as Toshiba argues, that the defenses and limitations of the contract of carriage are so limited. Regardless of the applicability of COGSA, Sea–Land's $500 limitation arises out of Clause 17 of its contract of carriage. *See United States Fire Ins. Co. v. S.S. Mee May,* 1990 AMC 1632, 1638, 1990 WL 154696 (S.D.N.Y.1990). Irrespective of COGSA, the contract expressly limits Sea–Land's liability to $500 per package unless a higher value was declared and higher charges paid.

B. *Burlington Northern's Liability*

The second question is whether the various provisions in Sea–Land's bill of lading suffice to extend the $500 per package liability limitation to Burlington Northern. In addition to the clauses cited above, two further clauses of the bill of lading are relevant to this

---

5. The Second Circuit held in *General Elec. Co. v. M/V Nedlloyd,* 817 F.2d 1022 (2d Cir.1987), that the carrier must provide the shipper with an opportunity to declare a higher value. "For this purpose a space is usually provided on the front of a bill of lading for a shipper to use in declaring excess value." *Id.* at 1024. According to the principles enunciated in *General Electric* and in *Union Carbide Corp. v. M/V Michele,* 764 F.Supp.

783 (S.D.N.Y.1990), Sea–Land's bill of lading unquestionably gave the plaintiff the opportunity to declare a higher value and pay the *ad valorem* rate. This court concurs with *Institute of London Underwriters v. Sea–Land Service,* 881 F.2d 761 (9th Cir.1989), in which Sea–Land's clause was specifically found to provide the shipper with an opportunity to declare a higher value and avoid the $500 per package damage limitation.

inquiry. Paragraph 2, "Parties Covered," provides that:

> If the vessel or other craft in use is not owned by or chartered by demise to Carrier Sea-land Service, Inc., this bill of lading shall take effect for purposes of limitation of liability only, as a contract with the owner or demise charterer, as the case may be. If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer, agents, stevedores, lashers, watchmen, and other independent contractors) is the carrier or bailee of the goods, or is otherwise liable in contract or in tort, all rights, exemptions, and limitations of liability provided by law and by the terms of this bill of lading shall be available to such other persons in contracting for the foregoing rights, exemptions, and limitations of liability. Carrier is acting as agent and trustee for the persons above mentioned. Particulars of the ownership of the vessel or other craft used may be obtained from Carrier or its agents.

Finally, Section 21, "Through and On Board Bills of Lading," provides in part that:

> At all times when goods are in the care, custody or control of a participating land carrier such carrier shall be entitled to all rights privileges, liens, limitations of and exonerations from liability ... granted to any carrier hereunder to the full extent permitted to participating carriers under any rules and regulations and laws relating to carriers.

Plaintiff argues that the phrase "actual custody" in the clause paramount restricts the limitation of liability to the period during which the cargo is in the actual custody of Sea-Land. The cases cited by the plaintiff do not, however, reach the result for which it argues. The district court in *Seguros Illimani S.A. v. M/V POPI P*, 735 F.Supp. 108 (S.D.N.Y.1990) for example, also considered a clause paramount that contained the phrase "actual custody." The court nevertheless found that the separate Himalaya clause was sufficient to limit the liability of the stevedore—a separate entity—to $500 per package. *Id.* at 110–11. Similarly, despite the holding of the court in *St. Paul Fire & Marine Ins. v. Sea-Land Service*, 745 F.Supp. 186 (S.D.N.Y.1990) that the phrase "actual custody of the Carrier" in the clause paramount refers solely to the primary carrier itself, that case is not factually on point. The court in *St. Paul* was construing *only* the clause paramount in that case; no other clauses of the bill of lading were at issue. Because the liability of subcontractors or agents was not at issue in that case, the court did not need to decide, as I must here, whether the separate Himalaya provisions extended the bill of lading damage limitations to other entities.[6]

A closer question is presented as to whether the two other clauses—"Parties Covered" and "Through and On–Board Bills of Lading"—suffice to extend the $500 damage limitation to Burlington Northern. The courts appear to be split as to whether *general* language extending bill of lading protections to "subcontractors" covers inland carriers. In *Lucky–Goldstar v. S.S. California Mercury*, 750 F.Supp. 141 (S.D.N.Y.1990), the Himalaya clause provided that "[t]he Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods.... every such servant, agent, and sub-contractor shall have the benefit of all provisions herein for the benefit of the Carrier as if such provisions were expressly for their benefit." *Id.* at 144. The court in *Lucky–GoldStar* noted that the field of international shipping is noted for the exactitude of its documentation, and held that extensions of liability will only be found where the language is clearly expressed. Citing to *Tokio Marine & Fire Ins. v. Hyundai Merchant Marine*, 717 F.Supp. 1307 (N.D.Ill.1989), the court held that had the parties "intended to include Conrail among those protected by Clause Five [the Himalaya Clause], little effort would have been required for them to have added to that clause the term "inland carriers." *Id.* at 145. In denying Conrail the benefit of the $500 limitation, the court took special notice of the fact that the contract did refer to inland

---

6. Additionally, as noted above, the Clause Paramount temporally constricts only the application of COGSA; it does not limit protections found in other contractual provisions.

carriers in clauses other than those which extended the liability limitations.[7] Thus, were this court to follow the strict reading of *Lucky–Goldstar,* the more general "Parties Covered" clause could not fairly be read to encompass inland carriers. *But see Taisho Marine and Fire Ins. v. Maersk Line,* 796 F.Supp. 336 (N.D.Ill.1992) (rail carrier covered by $500 bill of lading damage limitation despite fact that bill of lading language was general and only extended protection to "subcontractors").

■ I need not resolve this issue, however, because the more specific clause 21, "Through and on Board Bills of Lading," clearly extends the damage limitation provisions of the bill of lading to Burlington Northern in this case.[8] In *Tokio Marine & Fire Ins. v. Hyundai Merchant Marine,* 717 F.Supp. 1307 (N.D.Ill.1989), the court was faced with a bill of lading quite similar to the one at bar. The court there cited to a clause in the bill of lading that provided that "when goods are in the custody of the Inland Carrier it shall be entitled to all the . . . limitations of and exoneration from liability granted to the Carrier. . . ." *Id.* at 1309. The instant bill of lading, in its section 21 "Through and on Board Bills of Lading" provides that:

> At all times when goods are in the care, custody or control of a participating land carrier such carrier shall be entitled to all rights privileges, liens, limitations of and exonerations from liability . . . granted to any carrier hereunder to the full extent permitted to participating carriers under any rules and regulations and laws relating to carriers.

Sea–Land's bill of lading not only refers to "participating land carriers," as required under the holding of *Lucky–Goldstar,* but has a clause virtually identical to the one deemed sufficient in *Tokio Marine.*[9] The intent to afford the protections of the bill of lading to Burlington Northern—Sea–Land's participating land carrier—is sufficiently clear.

■ Whether the limitation provided by the bill of lading extends its protection to BN for its inland carriage also turns in part on whether it is a "through bill of lading." If so, the Carmack Amendment, which might otherwise apply to the inland portion of the journey and disallow a limitation on liability, does not apply. *See Capitol Converting Equip., Inc. v. LEP Transp., Inc.,* 965 F.2d 391, 394 (7th Cir.1992). A through bill of lading is one which governs the entire course of transport and applies to the connecting carriers despite the fact that they are not parties to the contract. "A bill of lading issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States is termed a 'through bill of lading.'" *Capitol Converting,* 965 F.2d at 394. The question of whether a bill of lading is a through bill of lading is predominantly a factual one. In *Tokio Marine & Fire Ins. v. Hyundai Merchant Marine,* 717 F.Supp. 1307 (N.D.Ill.1989), the court explained that "the relevant indicia include whether the final destination is designated thereon, the method by which the connecting carriers are compensated and, more generally, the conduct of those carriers." *Id.* at 1309. *See also Nebraska Wines and Spirits, Inc., v. Burlington Northern Railroad,* 1992 WL 328938, *5 1992 U.S.Dist. Lexis 17095, *12

---

7. It should also be noted that *Lucky–Goldstar* is factually distinguishable, as that court based its holding in part on the fact that Conrail had not contracted directly with the issuer of the bill of lading, Mitsui, but rather with a separate entity, MOL. In the current action, Burlington contracted directly with Sea–Land.

8. Today's holding does not speak to the other issue considered in *Lucky–Goldstar*—whether a Himalaya clause covers entities not directly hired by the primary carrier. This court expresses no opinion on the applicability of the damage limitation of the Sea–Land bill of lading to entities allegedly hired by Burlington Northern and not named as defendants in this action.

9. The court is unpersuaded by plaintiff's argument that this extension of liability may not be provided for in a clause separate from the "parties covered" provision. First, there is no reason as a matter of law to mandate that there be only one Himalaya type clause. More importantly, logic seems to support the placement of inland carriers in a separate clause. Unless the bill of lading is a "through" bill of lading, the use of inland carriers is not contemplated thereunder. Therefore, it is not unreasonable to extend the contractual protections of the bill of lading to land carriers in a separate section which deals specifically with through bills of lading.

(W.D.Mo.1992). The facts in the instant case leave no room for doubt that the bill of lading at issue is a through bill of lading. No domestic bill of lading was ever issued for the shipment in question,[10] the bill issued to Toshiba by Sea–Land lists the final destination of the shipment as New York, and Sea–Land was responsible for making the arrangements for the cargo's inland transportation from Tacoma to New York. Thus, the terms of the bill of lading govern the goods' entire transport.

### Conclusion

Judgment is granted to the defendants on the question of whether the $500 per package damage limitation applies to the named defendants.

SO ORDERED.

---

10. All parties concur that the only bill of lading that governs this shipment was issued by Sea–Land. *See also Nebraska Wine & Spirits, Inc. v. Burlington Northern Railroad Co.,* 1992 WL 328938 1992 U.S.Dist. Lexis 17095 (W.D. Missouri 1992) (construing identical domestic BN documentation as not constituting a separate bill of lading.)