19 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CATERPILLAR, INC., a Delaware corporation, Plaintiff-Appellant,
v.
COLUMBUS LINE, INC., a corporation; the Atchison Topeka and
Santa Fe Railway, a Delaware corporation,
Defendants-Appellees.
 No. 92-56371.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided Feb. 25, 1994.
 
 Before: TANG, PREGERSON, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Caterpillar sued Columbus Line and the Atchison Topeka and Santa Fe Railway (Santa Fe), claiming cargo damage and negligence in connection with the carriage of two generators. The district court granted Columbus Line and Santa Fe's motion for summary judgment, and we affirm.
 
 ANALYSIS
 
 3
 I. Application of the Bills of Lading to Santa Fe's Inland Carriage
 
 
 4
 At the pretrial conference in this case, the parties stipulated as follows: "The bills of lading obligated Columbus Line to perform the ocean portion of the voyage and to procure the inland carriage of the cargo from Chicago, Illinois to Los Angeles, California." Caterpillar's argument, focusing on this agreed upon language, may be simply stated. Columbus Line, in Caterpillar's view, promised to do two things: (1) procure transportation to Los Angeles, and (2) perform ocean transport to Australia. Because the derailment of the generators involved neither procuring inland transportation nor performing ocean transportation, the terms of the bills of lading--including the $500 limitation on liability--do not apply to the derailment. Caterpillar claims, in effect, that Columbus Line's obligations under the bills of lading were suspended while the generators were being transported overland.
 
 
 5
 Caterpillar's reading of the bills is overly narrow and unpersuasive. The bills of lading use the phrase "through transportation basis." Although the bills allude to Los Angeles as the "port of loading," Chicago is listed as the "place of receipt" and Melbourne as the "port of discharge." There is no dispute that Columbus Line hired and paid Santa Fe. Caterpillar paid a single sum, $4,960.00, to Columbus Line. The only bills of lading issued were those issued by Columbus Line to Caterpillar. Columbus Line's responsibility for the generators did not cease when they were turned over to Santa Fe.
 
 
 6
 The supposed cessation in responsibility runs counter to the premise of the "through bill," which is that "the receiving carrier is ... responsible for the whole carriage ... [and] each connecting road may still be sued for damages occurring on its line." Missouri, Kansas & Texas Railway Co. v. Ward, 244 U.S. 383, 387 (1917). The upshot is that "the liability of such participating carrier is fixed by the applicable valid terms of the original bill of lading." Id. The bills of lading issued by Columbus Line control Santa Fe's liability for damages occurring during inland carriage.
 
 
 7
 II. Extension of the Himalaya Clause to Santa Fe's Inland Carriage
 
 
 8
 Caterpillar argues that the "Himalaya Clause" in the bills of lading issued by Columbus Line does not extend to Santa Fe. "Himalaya Clauses should be strictly construed and limited to intended beneficiaries." Taisho Marine & Fire Ins. Co. v. The Vessel GLADIOLUS, 762 F.2d 1364, 1366 (9th Cir.1985). Here, determining whether Santa Fe was an "intended beneficiary" of the Himalaya Clause involves asking two questions: (1) whether the bills of lading, considered in their entirety, suggest that an inland carrier is a "subcarrier"; and (2) whether the contractual relationships between the shipper, the ocean carrier, and the inland carrier suggest that the Himalaya Clause should extend to the inland carrier. Id. at 1367.
 
 
 9
 First, the phrase "subcarrier" used in the Himalaya Clause appears nowhere else in the bills of lading. Nor do the bills of lading refer to "inland carriers," although the words "inland point" appear in Clause 4. It cannot be maintained, therefore, that the bills of lading on their face exclude an inland carrier such as Santa Fe from classification as a "subcarrier." This conclusion renders inapplicable the holdings of the district court cases cited by Caterpillar.
 
 
 10
 Caterpillar's attempt to limit the class of "subcarrier" to those entities that "procure" inland transport and "perform" ocean transport is once again unconvincing. The bills of lading clearly envision inland carriage between an "inland point" and the ocean. Though not explicitly defined, the phrase "subcarrier"--which, after all, alludes to "carriage"--provides "a well-defined class of readily identifiable persons to which COSGA benefits are extended under the terms of the clause." Taisho Marine, 762 F.2d at 1367.
 
 
 11
 Second, Columbus Line contracted directly with Santa Fe to provide inland carriage. This fact alone distinguishes the present case from the results in Taisho Marine and Lucky-Goldstar Int'l (America), Inc. v. S.S. California Mercury, 750 F.Supp. 141 (S.D.N.Y.1990). Further, when Santa Fe undertook carriage Columbus Line's contractual obligations had not yet been fulfilled. Inland carriage by Santa Fe, then, was not only contemplated but indeed essential to the carrying out of Columbus Line's duties to Caterpillar. Columbus Line issued only a single set of bills of lading. Finally, Caterpillar itself delivered the generators to Santa Fe. All these factors urge that the Himalaya Clause should extend to Santa Fe.
 
 
 12
 If confirmation of this interpretation of the Himalaya Clause were wanted, it could be found in the declaration of Thomas D. Merckel. Though by no means dispositive, Merckel's testimony provides good evidence of Columbus Line's intent with regard to the Himalaya Clause. Caterpillar offers no affidavit, and no custom or course of business, to show that it entertained a conflicting interpretation of the word "subcarrier" at the time the generators were shipped. Santa Fe was an intended beneficiary of the Himalaya Clause and was covered as a "subcarrier."
 
 
 13
 III. Application of Clause 4(b) to Santa Fe's Inland Carriage
 
 
 14
 Caterpillar argues that Clause 4(b) of the bills of lading requires the application of relevant California law. However, Caterpillar appears to overlook the portion of the clause that refers to provisions of state law "that cannot be departed from by contract to the detriment of the Merchant." The clause rejects limitations on liability not wherever state law applies, but where state law applies necessarily. The general notion here seems akin to unconscionability. Caterpillar does not show that the train derailment involved such necessarily applicable state law. Because Clause 4(b) does not apply to this case, we need not decide whether its limitation on liability is valid.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3